## SOUTHERN RY. CO. v. STEWART.
### No. 11609.

Circuit Court of Appeals, Eighth Circuit.

Nov. 1, 1940.

Rehearing Granted Dec. 7, 1940.

Walter N. Davis and Arnot L. Sheppard, both of St. Louis, Mo. (Wilder Lucas, of St. Louis, Mo., on the brief), for appellant.

Charles M. Hay, of St. Louis, Mo. (Charles P. Noell, of St. Louis, Mo., on the brief), for appellee.

Before SANBORN, THOMAS, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

John R. Stewart, the deceased, was a switchman in the employ of appellant. February 12, 1937, he was engaged at East St. Louis, Illinois, in coupling up certain cars on track No. 12 in appellant's yards. Several of said cars contained goods which were en route in interstate commerce from various states of the United States to various other states of the United States. While engaged in such duties, Stewart's arm was crushed by impact between the couplers of two cars of the train. It was charged by appellee that he died on February 14, 1937 as a result of such injury.

The suit is based upon an alleged violation of the Safety Appliance Act, Act of March 2, 1893, c. 196, Sec. 2, 27 Stat. 531, 45 U.S.C.A. § 2, as amended by Act of March 2, 1903, 32 Stat. 943, c. 976, 45 U.S.C.A. §§ 8–10, and is brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51.

Mary Stewart, plaintiff below, and the original appellee in this court, was the wife of deceased, and brought this suit April 20, 1937, to recover damages for the alleged wrongful death of the deceased as an employee of the appellant railroad, and also for his conscious pain and suffering proximately caused by the alleged violation by said appellant of the provisions of the Federal Safety Appliance Act, in furnishing on its line any car "used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars".

After the filing of the suit Mr. H. B. Haun, assistant general claim agent of the appellant Southern Railway Company, made a number of attempts, by personal contact and through others, at his request, to enter into negotiations for the settlement of this cause; and, during this period, amounts in settlement from $1,000 to $5,000 were tentatively offered to Mrs. Stewart, but not accepted. Finally, according to the testimony of Haun, he learned

that one Henry Hamm, the husband of a daughter of plaintiff, was, by his opposition, blocking the settlement. Hamm at that time was a switchman in the employ of the Terminal Railroad Association, which is owned by sixteen proprietary lines, of which appellant herein is one. The Terminal Association therefore readily accedes to all proper requests of the individual carriers. Mr. Haun testifies that when he learned of Mr. Hamm's attitude he called on Mr. J. L. Howell (now deceased), attorney for the Terminal Association, with offices at the Union Station in St. Louis, Missouri. To Mr. Howell, Haun testifies he said: "Mr. Howell, we oftentimes have cases where we have our own employees who are blocking these settlements. Here we have a case where we know that is what has happened, and I wish you would talk to Mr. Hamm about it". Mr. Howell then called up the east side office of the Southern Railway, where Hamm was employed, and requested that "they have Bill Hamm come in and see me at his first opportunity". When Hamm came in Howell referred to the death of the deceased, and the claim of the widow and said:

" 'They are offering to pay her five thousand dollars clear and she is willing to take it, but they say that you are standing in the way.'

" 'Yes', he said, 'I am, because I don't want that woman gypped out of what money she gets.'

"I said, 'How about the five thousand dollars?'

"He said, 'That is the reason; that is all right to settle for that, if she gets the five thousand dollars.'

"I said, 'What would it take to convince you that she would get the five thousand dollars?'

" 'Well', he said, 'I want it put in writing.'

" 'Well, now', I said, 'they can't do that. Railroads don't do that, put things in writing like that. It is not right. If the Southern tells you that they will pay your mother-in-law five thousand dollars clear, you can depend on what they tell you.'

"Well, he didn't know whether he could or not. I said, 'You know Bruce Campbell, don't you?'

"He said, 'Yes, I do'.

"I said, 'If Bruce Campbell tells you that they will see that your mother-in-law gets

five thousand dollars clear, and they stand all other expense, would you not believe him?'

" 'Well', he said, 'I would rather it would be put in writing.'

"I said, 'Would you believe me if I would tell you right now?'

" 'Yes, if you tell me that I will believe it.'

"I said, 'Mr. Campbell will tell you the same thing'.

"He said, 'If he will do that, that is all right.'

\* \* \* \* \* \*

"I turned around to my desk and called Bruce Campbell. I talked with Bruce Campbell and stated, in Mr. Hamm's presence, re-stated what I had already stated.

"Mr. Campbell says, 'That is correct.' He said, 'Is Hamm there?'

"I said, 'Hamm is right here now, listening, and Hamm says it is all right, that he thinks five thousand dollars is a reasonable settlement, if she gets that much money, and I have myself guaranteed him that she will get that, if you say so.'

"He says, 'Why not have him come right up here?'

"I said, 'That would be fine.'

"I said to Hamm, 'Hamm, can you go right up to Mr. Campbell's office?'

"He said, 'Sure'.

"I said, 'Hop on a car.'

" 'Go on, Hamm, and whatever Bruce Campbell tells you I will guarantee', and he went out of the office. He said goodbye, shook hands, and away he went. That was the whole conversation.

"At that time I was under the impression that it was an accident, and they were settling it up. I knew nothing more about it, or heard nothing more about it, until Mr. Noell called me up on the telephone and had a conversation about the suit. I said I didn't know there was a suit. I think the next morning I saw in the paper that there had been a suit filed".

On November 30, 1937, there was a meeting in the office of Kramer, Campbell, Costello & Wiechert, attorneys for appellant, for the purpose of effecting a settlement with Mrs. Stewart on account of the death of her husband. Those present were Mr. Wiechert, attorney for appellant, Mary Stewart, widow of deceased, her daughter, Mrs. Henry Hamm, and her husband, Henry Hamm. It appears in the testimony that

Mrs. Stewart had not previously agreed to this settlement, but did so finally, whereupon Wiechert, Mrs. Stewart, and Mr. and Mrs. Hamm repaired to the Probate Court of St. Clair County, Illinois, at Belleville, in which court the administration of the estate of John R. Stewart, deceased, was pending. The petition of Mrs. Stewart for leave to settle the case against appellant and relieve the latter from further liability in the premises was filed. The amount of the settlement consisted of $5,150, which included an attorney's fee of $150, which was paid to a Mr. Felsen, an attorney called in by Mr. Wiechert to represent Mrs. Stewart, instead of Mr. Noell, her attorney who filed the suit. The Probate Court, on that day, made its order approving said settlement. At a later date Mrs. Stewart filed in the said Probate Court a petition to set aside the previous order of that court authorizing and approving said settlement of November 30, 1937, alleging that the papers signed by her, praying for authority to settle, were signed as a result of fraud and duress on the part of appellant, and its agents and attorneys. After hearing in the Probate Court, her motion to set aside the approval of said settlement was denied. Subsequently, at the trial of this cause in the District Court, Mrs. Stewart testified that she was induced by fraud and duress to file the petition and procure the order of compromise in the Probate Court because of her fear, induced, in part at least, by a statement of Mr. Wiechert which she took to mean that if she declined to do so, her son-in-law Hamm might lose his position with the Terminal Railroad Association, in which case it would be difficult, if not impossible, to secure other employment, and his wife, Mrs. Stewart's daughter, and their children, would be reduced to privation and suffering thereby. The testimony of her daughter, Mrs. Hamm, corroborated that of Mrs. Stewart. At this point the offer of appellant to introduce evidence of the alleged compromise and that its setting aside was rejected by the Probate Court was denied upon objection by counsel for appellee.

The case was duly tried in the district court, notwithstanding said purported settlement, and the jury returned a verdict in favor of appellee in the sum of $17,500. Hamm did not testify at the trial. From the judgment entered upon that finding this appeal is taken. After the submission thereof, the death of Mary Stewart, administratrix, was duly suggested, and, pursuant to stipulation of counsel, Clarence A. Stewart, as administrator of the estate of John R. Stewart, deceased, was substituted as appellee.

1. The first point urged by appellant in its brief and argument is that the court erred in denying appellant's motion for a directed verdict because, (a) the record contains no evidence that the deceased attempted to open the coupler knuckles by using the pin-lifter, an appliance provided to operate the automatic coupler, and (b) because the record contains no evidence that an inefficient coupler was the proximate cause of decedent's injury.

2. The next following points and authorities concern the error assigned because of the action of the trial court in disregarding, and, in effect, setting aside the action of the Probate Court in allowing the compromise settlement referred to, and in refusing to set the same aside.

3. It is insisted that neither fraud nor duress may be predicated on the facts and circumstances in evidence.

4. Error is assigned to a part of the court's charge that, in the absence of evidence that Stewart did not use the pin-lifter, the law presumes that he did use it before going between the ends of the cars.

1. With respect to this first specification of error relied upon, of course it must be recognized that the sole charge of breach of duty against defendant-appellant is that it furnished the car or cars, here concerned, equipped with couplers not of statutory requirement. It is only because of its bearing upon this charge that evidence concerning the condition of the pin-lifter there in attendance, and its use, or disuse, by the deceased, is relevant. Direct evidence upon these crucial points is lacking. The absence of such sufficiently direct testimony was apparently recognized by the court, and inspired the adding of the following paragraph to its charge: "You are instructed that it was the duty of deceased, in the performance of his work, before going between the cars mentioned in the evidence, to couple the same, to use the device mentioned in the evidence known as the pin lifter, extending on the outside of the car, and in the absence of any evidence that he did not use the pin lifter, the law presumes that he did use the pin lifter before going between the ends of the cars, if you

find he did go between the ends of the cars".

The only parts of the record that could bear upon the condition of the pin-lifter is the testimony of the witness Stogner, especially that found upon pages 29, 31, 34, 36 and 40 of the·transcript. The Supreme Court has held that the statute must be liberally construed so as to give a right of recovery for every injury the proximate cause of which was failure to comply with the Act. The jury may not be permitted to speculate as to the cause of the injury, and "the case must be withdrawn from its consideration, unless there is evidence from which the inference may reasonably be drawn that the injury suffered was caused by the negligent act of the employer". Atchison, Topeka & Santa Fe Ry. Co. v. Toops, 281 U.S. 351, 354, 355, 50 S.Ct. 281, 282, 74 L.Ed. 896. We are asked to declare that, on the record before us, the motions of appellant for a directed verdict and for a verdict in its favor non obstante veredicto should have been sustained; but in view of that record we cannot say that the inference might not reasonably have been drawn by the triers of the fact that there was probable cause to believe that the injury suffered was caused by the breach of duty charged. As hereafter shown the court's charge, to which exception is urged, was erroneous, and necessarily potentially prejudicial.

2. The main contention of appellant that the trial court erred in refusing to recognize the order and judgment of the Probate Court of St. Clair County, Illinois, is based upon the insistence that the action of the wife of the deceased to recover for the death of her husband, especially his pain and suffering, was an asset of decedent's estate of which the Probate Court had jurisdiction; and that its orders and judgments cannot be attacked collaterally in the federal trial court. The argument of appellee that the Probate Court had no jurisdiction over the claim of appellant is based upon the consideration that, "Where, as here, the death action is one under the Federal Employers' Liability Act [45 U.S. C.A. § 51 et seq.], it is governed exclusively by the federal law. The personal representative does not sue by his inherent right as representative of the estate of the decedent, but by virtue of statutory designation and as trustee for the person or persons on whose behalf the act authorizes

recovery. And the recovery is not for the benefit of the estate, is not an asset thereof, but is for the personal benefit of the beneficiary or beneficiaries designated by the statute". Chicago, Burlington & Quincy R. Co. v. Wells-Dickey Trust Co., 275 U.S. 161, loc. cit. 163, 48 S.Ct. 73, 72 L.Ed. 216, 59 A.L.R. 758; Taylor v. Taylor, 232 U.S. 363, 34 S.Ct. 350, 58 L.Ed. 638; Mann v. Minnesota Electric Light & Power Co., 10 Cir., 43 F.2d 36; American Car & Foundry Co. v. Anderson, 8 Cir., 211 F. 301, 308.

The widow was not compelled by law to apply to the Probate Court for authority respecting the compromise of this case, and we think the action of the trial court in rejecting the evidence of approval by the Probate Court of the compromise settlement was justified.

3. The testimony that the acts of the attorneys and claim agent of the appellant constituted a threat to deprive the son-in-law of Mrs. Stewart of his job with the Terminal Association was not strongly in support of the charge of fraud and duress. Nevertheless, it disclosed circumstances which may well have impressed the jury with their impropriety in consideration of the relationship of the various parties concerned. It is to be noted that the entire defense of the appellant was conducted by attorneys for the Terminal, and that the settlement of the suit was initiated by the Terminal attorney. The attorney who filed the suit was not consulted with respect to the settlement. Counsel for appellant insist that "neither fraud nor duress may be predicated on the facts and circumstances in evidence". But we think they meet the requirements of the charge, as heretofore declared by this court in Winget v. Rockwood, 69 F.2d 326, 330:

"* * * There is no legal standard of resistance with which the victim must comply at the peril of being remediless for a wrong done, and no general rule as to the sufficiency of facts to produce duress. The question in each case is whether the person so acted upon, by threats of the person claiming the benefit of the contract, was bereft of the quality of mind essential to the making of a contract, and whether the contract was thereby obtained. In other words, duress is not to be tested by the character of the threats, but rather by the effect produced thereby on the mind of the victim. The means used, the age, sex, state of health, and

322

mental characteristics of the victim are all evidentiary, but the ultimate fact in issue is whether such person was bereft of the free exercise of his will power.

\* \* \* \* \* \*

"The trend of modern authority is to the effect that a contract obtained by so oppressing a person by threats as to deprive him of the free exercise of his will may be voided on the ground of duress. What constitutes duress is a matter of law, whether duress exists in a particular transaction is usually a matter of fact":

We think that, at least this point should be left to the consideration of a jury.

4. The charge of the court to which an express specification of objection is preserved is, as has been said, erroneous for the reason that it is inconsistent with the burden of proof imposed by law upon a plaintiff. The Supreme Court has settled this question, as we think, finally and conclusively.

"In an action for damages for personal injuries while the defendant has the burden of proof of contributory negligence, the plaintiff must establish the grounds of defendant's liability; and to hold a master responsible a servant must show by substantive proof that the appliances furnished were defective, and knowledge of the defect or some omission in regard thereto. Negligence of defendant will not be inferred from the mere fact that the injury occurred, or from the presumption of care on the part of the plaintiff. There is equally a presumption that the defendant performed his duty.

\* \* \* \* \* \*

"A plaintiff in the first instance must show negligence on the part of the defendant. \* \* \* The negligence of a defendant cannot be inferred from a presumption of care on the part of the person killed. A presumption in the performance of duty attends the defendant as well as the person killed. It must be overcome by direct evidence. One presumption cannot be built upon another." Looney v. Metropolitan Railroad Co., 200 U.S. 480, 487, 488, 26 S.Ct. 303, 50 L.Ed. 564.

The errors assigned have been fully considered and the conclusion is that the judgment below must be reversed and remanded for a new trial in conformity with the views herein expressed. It is so ordered.