## SOUTHERN RY. CO. v. STEWART.
### No. 11609.

Circuit Court of Appeals, Eighth Circuit.
April 14, 1941.

Rehearing Denied May 7, 1941.

86

For former opinion, see 115 F.2d 317.

Walter N. Davis, and Arnot L. Sheppard, both of St. Louis, Mo. (Wilder Lucas, of St. Louis, Mo., on the brief), for appellant.

Charles M. Hay and William H. Allen, both of St. Louis, Mo. (Charles P. Noell, of St. Louis, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This was an action brought by the original appellee, Mary Stewart, widow of James R. Stewart, deceased, and the administratrix of his estate, to recover damages for injuries to and the alleged wrongful death of her husband while in the employ of appellant railroad company as a switchman. After the appeal had been perfected and was pending in this court, appellee Mary Stewart died, whereupon Clarence A. Stewart, as administrator of the estate of James R. Stewart, was substituted as appellee.

The action is bottomed upon the alleged violation of the Safety Appliance Act, 45 U.S.C.A. § 1 et seq., and is brought under the Federal Employers' Liability Act, Title 45 U.S.C.A. § 51. At the time of the accident resulting in the injury to and death of James R. Stewart, he was in the employ of the Southern Railway Company, a common carrier, as a switchman, working as a member of a switching crew in the yards of the defendant at East St. Louis, Illinois, and it is conceded that at the time of receiving his injuries he and the railway company were engaged in interstate transportation. It will be convenient to refer to the parties as they were designated in the lower court.

While engaged in coupling up certain cars on track 12, Stewart's arm was crushed by impact between the couplers of two cars which he was attempting to couple. He died two days later as the result of such injury. It was charged by the plaintiff that the defendant had violated the provisions of the Federal Safety Appliance Act, by furnishing on its line cars used in moving interstate traffic not equipped with couplers coupling automatically by impact and which can be uncoupled without the necessity of men going between the ends of the cars. In addition to its general denial, the defendant pleaded affirmatively that the action had been compromised and settled for the sum of $5,000 and that plaintiff had executed a release and that the Probate Court of St. Clair County, Illinois, had made and entered its order approving such settlement. By way of reply, plaintiff admitted that the settlement had been made and had been approved by the Probate Court and that a release had been signed but that such settlement was procured by means of fraud and duress.

At the close of all the testimony defendant moved for a directed verdict upon substantially the following grounds: (1) There was no substantial evidence showing or tending to show that the defendant was guilty of any actionable negligence or want of duty as charged in the petition; (2) there was no substantial evidence that any want of duty of the defendant was the proximate cause of the fatal injury received by plaintiff's intestate; (3) it appears that plaintiff secured from the Probate Court of St. Clair County, Illinois, an order authorizing a settlement by her of all claims and demands on account of injuries to her deceased husband for the sum of $5,000, pursuant to which she had in fact settled and satisfied all claims and executed a release, and the order and judgment of the Probate Court of St. Clair County, Illinois, was not subject to collateral attack and was binding upon the plaintiff; (4) there was no substantial evidence showing or tending to show that the defendant, its agents or servants, were guilty of any actionable fraud or duress in procuring such settlement. The motion was denied and

the court sent the case to the jury upon instructions to which certain exceptions were saved by the defendant. The jury returned a verdict for plaintiff in the sum of $17,500, and thereafter defendant moved for judgment notwithstanding the verdict, or, in the alternative, for a new trial, upon the grounds set out in the motion for a directed verdict and the further ground of error in the charge to the jury, besides other grounds not now material. The motion was denied and from the judgment entered defendant prosecutes this appeal.

We reversed on the ground that the court erred in instructing the jury, and remanded the case for a new trial. Southern Railway Co. v. Stewart, 8 Cir., 115 F. 2d 317. Both parties petitioned for a rehearing. The plaintiff, in its petition for rehearing, contended that the lower court had not erred in instructing the jury, while the defendant urged in its petition, that we should have sustained its contention with reference to the alleged error of the lower court in refusing to grant its motion for a directed verdict, contending that there was no substantial evidence that the deceased attempted to open the coupler knuckles by using the pin lifter, an appliance provided to operate the automatic coupler, before going between the ends of the cars which he was attempting to couple, and that there was no evidence that the coupler was defective. Upon re-argument, defendant asserts two errors of the lower court: (1) The court erred in denying its motion for a directed verdict, and (2) the court erred in instructing the jury on the questions of defendant's duty and proximate cause. On this re-argument the question of the insufficiency of the evidence is brought sharply to our attention, and in our view of the record, it will only be necessary to consider that question.

The statute prohibits a common carrier from using or hauling "any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." 45 U.S.C.A. § 2. The test of compliance with these requirements is the operating efficiency of the appliances with which the car is equipped. When a violation of the act is alleged as the basis of a cause of action for damages, the question is not simply whether the coupling device as originally installed conformed to the statutory requirements, or whether the carrier has exercised proper care in keeping it in condition to function efficiently, nor whether the equipment is defective in a general sense through the negligence of the carrier. It is generally held that a violation of the statute is shown by proof that cars upon a fair trial failed to couple automatically by impact. Neither of the parties here question these generally applicable tests. Having them in mind, we shall refer to the proof.

These couplers weigh some forty pounds each. When functioning properly, they will couple automatically by impact when either one or both couplers are open, but they will not couple automatically when both knuckles are closed. As one faces the end of a car properly equipped with automatic couplers, on the left side is a pinlifting lever. Where both knuckles of the couplers are closed, it is necessary to prepare the car for coupling on impact by opening one of these knuckles. This, in a properly functioning coupler, may be accomplished by the use of this pinlifting lever, which extends to the outer side of the car, without the necessity of going between the ends of the cars.

Stewart received his injures on February 12, 1937. He was an experienced switchman sixty years old, and the switching crew of which he was a member was doing certain switching on track number 12. This track extended east and west and was a straight track. The crew had a group of seventeen cars on this track, which were to be coupled together and then transferred to various industrial switch tracks. The engine was headed west, with all of the cars to be coupled east of it. About seven or eight of the cars, those nearest the engine, had been coupled together and were attached to the engine at the time of the accident. Stewart, with the other switchmen, was working on the north side of this track, and the engineer was on the north side of his engine. The engineer was operating under signals from Stewart. It was about 5:40 o'clock p. m. Just previous to the accident, the deceased gave the engineer a back-up signal and then a stop signal. The cars were coupled. Deceased walked back to the next car, gave the engineer another back-up signal and a stop signal, both of which were obeyed by the engineer. This left an opening

between the seventh and eighth car, and there had been no effort to make this coupling by impact prior to the time the car was stopped, leaving an opening between it and the car to which it was to be coupled. After the car had been stopped pursuant to deceased's signal, he stepped into the space between the two cars, and a little later the engineer heard him "holler," and although the engineer had not moved the cars that had been coupled together after deceased gave the stop signal, there was nevertheless a collision between the two cars, and deceased's arm was crushed between the couplers of the two cars. Obviously the car east of the opening must have been shunted west by contact with some force from the east, although the record is silent on this question, and no cause of action is predicated upon that fact.

■ The available pin lifter lever was on the north side of the west end of the car east of the opening. That was the only pin lifter available to the deceased on the north side of the cars in the opening between the two. It was the duty of the deceased to use the pin lifter in opening the knuckle on the car so as to prepare it for impact. Chesapeake & O. R. Co. v. Charlton, 4 Cir., 247 F. 34. There is no evidence that he did so. The engineer, who was taking his signals from the deceased, testified that, "There was no obstruction between me and him when he gave me the stop signal and went between the cars." The visibility was "pretty clear," and deceased signaled with his hand, which the engineer could see. He testified that he did not notice deceased attempt to use the pin lifter before he went in between the cars, although he was looking at deceased for signals all the time. This would seem to be proof of a negative as nearly as such proof could be made. The engineer who was in position to see and whose business it was to observe what movements the deceased made, testified that he did not see him attempt to use the pin lifter. The effective use of the pin lifter requires a visible effort which could scarcely have gone unnoticed had it been made. The knuckle to be opened weighs some forty pounds. As said by us in Chicago, M., St. P. & P. R. R. Co. v. Linehan, 8 Cir., 66 F.2d 373, 378: "If plaintiff failed to operate the coupler in a proper manner, the fact of its not working would be no evidence of defect. Just how much force may be necessary in operating the pin lever in order to bring about an opening of the knuckle cannot be definitely stated. There is no accurate measuring stick. One pull of the lever might be sufficient if enough force were put behind it, and there might be as much force exerted in one pull as in two or three. The question must be, Was there an earnest and honest endeavor to operate the coupler in an ordinary and reasonable manner, and was enough force applied to open the knuckle if the coupler was in proper condition? * * * A court cannot say that one pull upon the lever and failure of the same to respond, regardless of the force used or the manner of operation, is sufficient to show a defective coupler, nor can it say on the other hand that one pull can never be sufficient to show reasonable force."

■ The point we are here making is that had the deceased made the attempt to operate the pin lifter, his efforts, under the circumstances, could not have escaped the observance of the engineer who was a witness for the plaintiff. The burden of proof was, of course, upon the plaintiff. There had been no previous unsuccessful attempt to make this coupling by impact, which might have been some evidence of insufficiency or defect. It is argued that deceased was excused from any effort to prepare the coupler for impact by use of the pin lifter because it is said there was evidence that the pin lifter did not respond. This contention is based upon the testimony of the switchman Stogner. He testified as follows:

"Q. Now, after this accident, when you coupled the cars, which I presume you did, did you couple the cars after the accident? A. I did.

"Q. How did you open the knuckle? A. I opened it with my hand.

"Q. Let me ask you, Mr. Stogner, if the coupler is working automatically, or the pin lifter, is it necessary to go in between the cars to open with your hands then? A. No, sir."

He testified that after the accident he found both knuckles of both couplers closed.

■ There was no evidence of mechanical defect or insufficiency in the couplers, including the pin lifter. There was no evidence of an unsuccessful attempt to couple them by impact when prepared for coupling. The testimony of the

foreman that he opened the knuckle with his hand does not indicate that there was a defect in the coupling device. His testimony that it is not necessary to go in between the cars to open the coupler with one's hands, if the coupler or pin lifter is working automatically, adds nothing to the proof as to the condition of the couplers on these cars. It certainly does not prove that the coupler or pin lifter on this particular car did not operate satisfactorily. On cross-examination the witness was asked which knuckle he tried to open or which pin lifter he tried to use, and he answered, "The one on the north side." But he does not testify that he was unable to open the knuckle by use of the pin lifter, nor what, if any, effort he made so to do. It must be remembered that this incident occurred after the accident and after deceased's arm had been crushed in the coupler. What effort he made to open the knuckle by use of the pin lifter, or what force he applied, finds no answer in this record but is left to conjecture. Did he make "an earnest and honest endeavor to operate the coupler in an ordinary and reasonable manner," and did he make application of "enough force to open the knuckle if the coupler was in proper condition"? It does not even appear whether this "try" to open the knuckle came after the knuckle was opened or before. A very essential element is left to conjecture and speculation. "* * * where proven facts give equal support to each of two inconsistent inferences; * * * neither of them being established, judgment, as a matter of law, must go against the party upon whom rests the necessity of sustaining one of these inferences as against the other * * *." Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 393, 77 L.Ed. 819; Wheelock v. Freiwald, 8 Cir., 66 F.2d 694. Here, there was proof that the deceased did not use or attempt to use the pin lifter. There was no proof that this coupler upon any prior attempt had failed to couple by impact. There was no proof of mechanical defect or insufficiency but only the statement of a witness who says that after the accident he tried to use the pin lifter without stating whether the trial was successful or what effort was included therein. A verdict can not be permitted to stand which rests wholly upon conjecture or surmise, but must be sustained by substantial evidence. Midland Valley R. Co.

v. Fulgham, 8 Cir., 181 F. 91, L.R.A.1917 E, 1.

There being no substantial evidence to sustain the verdict, the judgment appealed from is reversed and the cause remanded with directions to grant the defendant's motion for judgment in its favor notwithstanding the verdict.