## STEWART, ADMINISTRATOR, *v.* SOUTHERN RAILWAY CO.*

No. 161. Argued January 8, 1942.—Decided February 16, 1942.

*Messrs. William H. Allen* and *Charles M. Hay* for petitioner.

---

*On petition for rehearing, it appearing that the parties had settled the case, the judgment of the Court in this case was vacated, that of the Court of Appeals reversed, and the case remanded to the District Court with directions that it be dismissed as moot, *post*, p. 784.

*Mr. Sidney S. Alderman*, with whom *Messrs. Wilder Lucas, Arnot L. Sheppard, Walter N. Davis, H. O'B. Cooper*, and *S. R. Prince* were on the brief, for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

This action was brought by the administratrix of Stewart's estate to recover for his death in consequence of a violation of the Safety Appliance Act.[1] The crew of which the intestate was a member was engaged in coupling freight cars. Stewart was on the engineer's side of the train. He gave a back-up signal with which the engineer complied and then a stop signal which was obeyed. The engineer saw him go between the ends of the last car of the train and the car that was to be coupled to it. While the train was stationary, this car drifted into collision with the end car of the train. Persons who responded to Stewart's cries found him with his arm crushed between the couplers, both of which were closed. His arm was amputated and a few days later he died.

The administratrix, pursuant to leave of a state probate court, executed a release in consideration of $5,000 paid her. Subsequently she alleged in that court that she had been fraudulently induced to settle the case, and sought authority to rescind the release. The court decided against her after full hearing.

In the present action the plaintiff offered testimony as to the circumstances of the accident. The respondent relied upon the release; offered evidence to prove death was due to causes other than the injury, but introduced no testimony as to what occurred at the time of Stewart's

[1] 45 U. S. C. § 2.

injury, or as to the condition of the couplers. The trial court ruled that the decision of the probate court on the issue of fraud in procuring the release was not *res judicata,* and submitted to the jury all issues, including that of the validity of the release. A verdict was rendered for petitioner for $17,500. It does not appear whether this sum was intended to be in addition to the $5,000 theretofore received by the administratrix. The judgment entered was for the amount of the verdict without credit for that sum.

The respondent appealed to the Circuit Court of Appeals. The petitioner was substituted for the administratrix, who had died. Judgment *non obstante veredicto* was denied but the judgment was reversed and the cause remanded for a new trial, for errors in the charge to the jury.[2] On motion of both parties a rehearing was accorded. The court then held there was no substantial evidence to sustain the verdict, and reversed and remanded with directions to enter a judgment for the respondent.[3] This Court granted certiorari.

The record contains no direct evidence as to any defect in the coupler mechanisms of the cars involved in the accident. Each was equipped with an automatic coupler having a "pin lifter," whereby the pin in the coupler can be lifted so as to allow the jaw of the coupler to swing into the open position. The purpose of the device is to permit a switchman to open the coupler into the position where it will engage with the coupler of the other car upon impact without the operator going between the ends of the cars. The engineer, a witness for petitioner, testified that he did not see the intestate attempt to use the pin lifter, but did see him go between the cars. The foreman of the crew, also a witness for the petitioner, testified

[2] 115 F. 2d 317.
[3] 119 F. 2d 85.

that when he arrived the jaws of both couplers were closed and decedent's arm had been crushed between them. He testified that after the accident he coupled the cars in question by going between the cars and opening the jaw of the coupler by hand. He stated that he tried to use the pin lifter on the car at the end of the train, which would be the one available on the side of the train on which he was working. He also testified that if the coupler was in working order it could be set by the use of the pin lifter. He was not asked, and did not state, what effort he made to operate the pin lifter. Neither party asked him any further questions as to the working condition of the pin lifter or coupler.

The petitioner insists that, in the absence of evidence on behalf of the respondent, as to the condition of the coupler, the jury were entitled to infer that the pin lifter was not in working order, otherwise the foreman, an experienced man, would not have gone between the cars and opened the coupler jaw by hand. The court below held the jury was not entitled to draw this inference in the absence of testimony by the foreman with respect to his efforts to use the pin lifter and as to its condition.

We hold that, on this record, neither party is entitled to prevail. If the issue as to the condition of the coupler mechanism was determinative, a new trial should have been ordered so that this issue might have been resolved in the light of a full examination of the foreman, the witness who could have given further testimony on the subject.

The judgment must be reversed and the cause remanded to the court below for further proceedings. We express no opinion on other errors assigned in the Circuit Court of Appeals which may affect the disposition of the cause by that court.

*Reversed.*

MR. JUSTICE BLACK, dissenting:

The jury found from the evidence before it that the railroad had, contrary to the Federal Safety Appliance Act, used cars "not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." 45 U. S. C. § 2. The trial judge, who alone of the judges in the several proceedings below had the opportunity to see and hear the witnesses as well as to observe a coupling apparatus brought into the court room as an exhibit, made it clear that he regarded the evidence as sufficient to support the jury's verdict both by submitting the issues to it and by denying a new trial. The Circuit Court of Appeals took the same position in its first opinion. 115 F. 2d 317. Solicitude for the right to trial by jury on issues of fact prompted the adoption of the Seventh Amendment as part of the Bill of Rights.[1] Respect for the institution of trial by jury should, in my judgment, prompt us to leave undisturbed the jury's finding in this case that the coupler was defective.

Because it must rely on the written page rather than living words, an appellate court can never fully appreciate the effect of testimony heard by a jury of local citizens. Even in the written record, however, I can find support for the jury's finding which convinces me that it should stand. The transcript shows the following:

If a pin lifter functions properly, there will be automatic coupling of the cars, making it unnecessary for a workman to go between them. Stewart was an experi-

---

[1] Amendment VII: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."

enced workman. Besides being his duty, it was conducive to his safety for him to use the pin lifter to bring about coupling. On the day he was found with his arm crushed between the couplers, he had successfully handled the coupling of other cars.

The crew foreman who shortly after the accident undertook the coupling of the particular cars between which Stewart was crushed testified as follows:

"Q. Now, after this accident, when you coupled the cars, which I presume you did, did you couple the cars after the accident?

"A. I did.

"Q. How did you open the knuckle?

"A. I opened it with my hand.

"Q. Let me ask you, Mr. Stogner, if the coupler is working automatically, or the pin lifter, is it necessary to go in between the cars to open with your hands then?

"A. No, sir."

And in the course of cross examination by the company's attorney, whose questions indicated he accepted the fact that Stogner had tried without success to use the pin lifter, Stogner was asked: "Now, which knuckle did you try to open, or which pin lifter did you try to use?" His reply—"The one on the north side"—designated the one connected with the coupler which had caused Stewart's death.

Had Stogner's attempts with the pin lifter been successful, he would not have had to go between the cars to couple them. But that was what he testified he did after trying to raise the pin lifter. True, Stogner did not say how many attempts he made, nor how much force he applied in the effort. But the jury could reasonably have inferred that the company's foreman, a worker of many years of experience, applied such force as would have raised a pin lifter which was not defective. Moreover, since there was a statutory duty not to continue using

this particular pin lifter if it was defective, we can reasonably assume that the railroad's inspectors made some examination of it. Yet no inspector nor anyone else was called by the railroad to give testimony on the condition of the pin lifter immediately after the accident.[2] Under these circumstances, reasonable jurors are not to be denied the right to make inferences which other reasonable people would make: that Stogner tried in the usual way to couple the cars; that his efforts were unsuccessful; and that he was therefore compelled to go between the cars to effect a coupling. And they could therefore have concluded that the pin lifter was defective. The jury's finding of this fact should not have been disturbed.

MR. JUSTICE REED, MR. JUSTICE DOUGLAS, and MR. JUSTICE MURPHY join in this dissent.

---

[2] Cf. *Ridge* v. *Norfolk Southern R. Co.,* 167 N. C. 510, 521, 83 S. E. 762; *Kirby* v. *Tallmadge,* 160 U. S. 379, 383; *Interstate Circuit* v. *United States,* 306 U. S. 208, 225–226.