## SCHNEE v. SOUTHERN PAC. CO.

### No. 12547.

United States Court of Appeals,
Ninth Circuit.

Jan. 31, 1951.

Rehearing Denied Feb. 28, 1951.

Leslie C. Gillen, San Francisco, Cal., Edward W. Scruggs, Tucson, Ariz. (Herbert Chamberlin, San Francisco,. Cal., of counsel), for appellant.

Knapp, Boyle, Bilby & Thompson, B. G. Thompson and Arthur Henderson, all of Tucson, Ariz. (Lawrence L. Howe, San Francisco, Cal., of counsel), for appellee.

Before DENMAN, Chief Judge, and ORR and POPE, Circuit Judges.

ORR, Circuit Judge.

This action is based on the Safety Appliances and Equipment Act, 45 U.S.C.A. § 1 et seq., and the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. Damages are asked for personal injuries sustained by appellant, which resulted from

an accident in which appellant was involved while engaged in the performance of his duties as an employee of appellee. At the conclusion of the submission of the evidence appellee moved the Court for a directed verdict, the motion was granted and, at the direction of the Court, a verdict in favor of appellee returned.

■ Appellant contends there was sufficient evidence to submit the case to the jury. In resolving that question "we need look only to the evidence and reasonable inferences which tend to support the case" of appellant. Wilkerson v. McCarthy, 336 U.S. 53, 57, 69 S.Ct. 413, 93 L.Ed. 497. Viewing the evidence in that light it is sufficient to show the following:

Appellant was employed as a signal maintainer. His job required inspection and maintenance of signals along certain portions of the right of way. Appellee supplied him with a motor car on which he traveled from place to place. On the day of the accident, August 26, 1946, appellant had occasion to travel from Willcox, Arizona, a distance of about two and one-half miles, east for the purpose of repairing a signal. He traveled at a speed of about seventeen miles per hour. On this trip he passed over the spot where the accident subsequently occurred. After examining the signal apparatus and finding that he required more tools to make the needed repairs appellant returned to Willcox over the same tracks at about the same rate of speed, picked up the required parts and then began a return trip. After traveling about two miles his motor car was derailed. Appellant was thrown onto the track and severely injured.

Witnesses described conditions at the scene of the accident as follows: Marks made by the motor car on the ties as it went along, derailed, for a considerable distance, were found. Near the place where the marks began, a wooden stake approximately eighteen inches long, an inch and a quarter square, one end of which had broken off and splintered, the other end presenting the appearance of having been hit by a heavy object, was found. Oil and grease was observed on this stake but it was unpainted. Splinters were scattered for the length of four ties from the point where the motor car left the rails. Marks and splinters were found on the underside of the motor car flooring which had the appearance of having been struck by an object which had lifted the motor car. Abrasions on a cross-tie just off the center of the track were found at a place three or four ties before the derail marks started. The abrasion on the tie was described as a hole about an inch and one-half in diameter and located about three or four inches below the top of the tie and about an inch into the tie at an angle of approximately forty degrees. The hole was filled with wood fibers which ran lengthwise into it. The tie fibers ran diagonally across the grain. A broken wedge of wood of the kind and character of the white pine stake found at the scene of the accident and hereinbefore described, was found between the floor of the car and the brake rod at a point about $7/8$ inch extending up to the floor of the car. There was a clearance between the floor of the car and the top of the rails of between fifteen and sixteen inches. The wedge found under the motor car was from fourteen to sixteen inches in from its side and the hole in the tie was from fourteen to sixteen inches from the north rail of the track.

■ It seems quite evident from the above statement of fact that the accident was caused by a survey stake becoming lodged between a railroad tie and the under portion of the motor car. Different theories, which find support in the evidence, are advanced, but we are not called upon here to resolve the conflicts. One theory advanced by appellee is that appellant had placed on the motor car a stake which he had been using to mix a solution necessary in his repair work, and that it had fallen from the motor car and caused the accident. Appellant denied that such a stake was on the car. True, his testimony was contradictory of former statements, but his credibility would be a matter for a jury. On this appeal we are required to accept as true the denial in accordance with the rule that only the evidence and reasonable inferences which tend to support appellant's case should be considered. The theory of

the stake having fallen from the motor car being out, we have a stake on a railroad bed causing an accident. It came from somewhere. Who was responsible for its being there? Agents of the railroad customarily used similar stakes in survey work. Exhibits C–4 and C–5 portray a depression in the ballast between the tie in which occurred the hole (evidently made by contact with the stake that derailed the motor car) and the tie immediately to the west thereof. When depressions in the roadbed are detected surveyors place stakes indicating new surface is needed and indicating the elevation required. Such is the testimony of witness Norman A. Wisner, a section foreman then in the employ of appellant. He said: "They [grade stakes] are put there for new surface to surface it to the stakes and the center line stakes." (Record, p. 171) This witness also testified that he saw stakes sticking in the line and lying on the ground along the right of way, "once in a while, not too frequently, because we usually keep them cleaned up." Note could have been taken by the engineers of the depression in the ballast at the place indicated in the exhibits, and a stake driven to indicate the level ballast was to be placed in order to raise the depressed grade to the required standard; that the stake had been placed in such a manner as to become loosened by contact with an object traveling over the tracks. Loosening of the stake could have been caused by the motor car passing over it on two previous occasions. The motor car, on the return trip to Willcox, could have struck the stake and left it in a position slanting toward Willcox and then on the second trip in the opposite direction toward the scene where the repairs were to be made, hit the slanting stake, causing it to lodge in the under portion of the motor car and driving it into the tie. Given the facts as hereinbefore detailed, negligence could be found in the fact that the stake was left at such a height above the surface of the ballast as to prevent free passage of motor cars traveling the tracks. Accepting the test suggested by appellee on page 21 of its brief, the reasonable inference could be drawn (if the facts were as assumed above stated), that, (a) the agents of appellee had placed the survey stake on the right of way, that it was dangerous to passing motor cars in that sufficient clearance was not provided, and (b) its agents knew, or, by the exercise of reasonable diligence should have known, that the stake was there in a dangerous position and failed to exercise diligence in providing greater clearance. We do not accept the argument that the stake, in order to attribute negligence to appellee, must have been left firmly imbedded about four inches below the top of the railroad tie and protruding upwards at an angle of forty-five degrees from fifteen to sixteen inches above the rails in a westerly direction, the direction in which appellant was to come in his motor car. As we have said, the stake could have been so driven into the ground by the surveyors that it became loosened by contact with the motor car on the trip to Willcox to pick up additional tools and thrown in such a position as to be struck by the motor car on the second trip to the place where the repairs were to be made and by that impact driven into the tie and thus causing the derailment. Such a condition would leave no room for the argument of appellee that in order to maintain a theory that the stake was placed by the surveyors it must be found that the stake had been placed by them between the time appellant passed the point of accident on return to Willcox to get the missing parts and the second trip to the point where the repairs were to be made. The placing of the stakes was a practice of appellee's agent.

What we have said is not to be construed as a determination on our part that there was in the record specific evidence sufficient to show that any survey stake had been placed between the rails, or that any employee of the defendant company had done any act or thing which could be characterized as negligence proximately causing the derailment of the motor car. It must be conceded that a plaintiff seeking recovery under the Federal Employers' Liability Act is required to prove

what caused his injuries and that the cause included some negligence on the part of the defendant. Speculation as to what might have caused the plaintiff's injuries is ordinarily insufficient to make a case. Cf., Stewart v. Southern Ry. Co., 315 U.S. 283, 286, 62 S.Ct. 616, 86 L.Ed. 849.

■ Appellant asserts that he was entitled to have his case go to the jury under the rule of res ipsa loquitur. Appellee says that that doctrine is not applicable here because the motor car was not within the exclusive control of the defendant. It is said that the duty which that rule ordinarily imposes upon a defendant to furnish some explanation of the cause of an extraordinary accident which would not usually result in the absence of negligence cannot properly be applied where the injured party was himself in control of the instrumentality and had as much opportunity to observe the facts as the defendant.

The plaintiff's testimony if believed would tend to show that no act or neglect of his had anything to do with causing the accident. If the jury believed this testimony then it might infer that the derailing came from some other source. The case of Jesionowski v. Boston & Maine R. Co., 329 U.S. 452, 67 S.Ct. 401, 91 L.Ed. 416, deals with a similar situation which arose under the same Act. Under the authority of that case we hold that the rule of res ipsa loquitur would be applicable to the fact determination which the jury must make if it concludes that the stake which caused the derailment did not fall from the moving car. While there is much in the record tending to show considerable probability that the accident did occur in the manner in which the defendant claimed it did, yet we think the evidence did not compel such a conclusion. The jury should have been instructed that if they believed that the derailment was caused by a stick falling from the motor car, their verdict should be for the defendant, but if they believed that it was not so caused, they must then find whether the derailment was caused by some negligent act or omission of the defendant, and in making such determination they may be guided by the doc-

trine of res ipsa loquitur. Cf., Sweeney v. Erving, 228 U.S. 233, 240, 33 S.Ct. 416, 57 L.Ed. 815; Johnson v. United States, 333 U.S. 46, 48–49, 68 S.Ct. 391, 92 L.Ed. 468.

Judgment reversed.