**BARNETT v. TERMINAL R. ASS'N OF ST. LOUIS.**

No. 14692.

United States Court of Appeals
Eighth Circuit.

Jan. 16, 1953.

Rehearing Denied Feb. 12, 1953.

·Forrest Boecker, Clayton, Mo., for appellant.

Wayne Ely, St. Louis, Mo. (Joseph H. Miller and Richard B. Elster, St. Louis, Mo., on the brief), for appellee.

Before SANBORN, RIDDICK, and COLLET, Circuit Judges.

SANBORN, Circuit Judge.

Ferriel M. Barnett, a car inspector and repairman employed by the Terminal Railroad Association of St. Louis, an interstate carrier, was injured on December 29, 1950, when he was struck on one knee by the end of an air hose coupling which suddenly came apart. He brought this action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for damages, upon the claim that the accident and his injuries were caused by the negligence of the defendant (appellee). The defendant denied liability.

The case has been tried twice. On the first trial the jury disagreed. Before the case was set for retrial, the plaintiff moved for leave to dismiss without prejudice. The District Court denied the motion upon the ground that it would be unfair to the de-

fendant to permit such a dismissal without requiring the plaintiff to pay the expenses and reasonable attorneys' fees incurred by the defendant, and that it appeared that the plaintiff could not pay such expenses and fees.

The case was again tried to a jury. At the close of the plaintiff's evidence, the defendant moved for a directed verdict in its favor on the ground that the evidence failed to show that the accident was due to any negligence on its part. The motion was granted, and the plaintiff appealed from the ensuing judgment.

Two questions are presented for review: (1) Did the court err in denying the plaintiff leave to dismiss his action without prejudice? (2) Did the court err in directing a verdict at the close of the plaintiff's evidence?

The first of these questions must be answered in the negative. Under Rule 41(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., a plaintiff, after answer has been served, has no absolute or unqualified right to dismiss his action without prejudice. Home Owners' Loan Corporation v. Huffman, 8 Cir., 134 F.2d 314, 318. A District Court, in the exercise of a sound judicial discretion, may, as a condition for permitting a plaintiff to dismiss without prejudice after an answer has been filed, require him to pay the expenses and reasonable attorneys' fees incurred by the defendant. New York, C. & St. L. R. Co. v. Vardaman, 8 Cir., 181 F.2d 769, 771 and cases cited.

The second question is more difficult. The plaintiff in his complaint alleged that on December 29, 1950, he was inspecting brake shoes and making an air test on certain passenger cars in the defendant's yards in St. Louis, Missouri, and that while he was tightening a steam hose coupling between two of these cars, the air hose coupling between the cars burst apart, striking and injuring him. The plaintiff charged that the defendant was guilty of actionable negligence (1) in requiring him to work between cars so situated that the air hose coupling was likely to burst apart when the air pressure was turned on; (2)

in assuring him that the place he was working was safe, when it was not safe; (3) in failing to provide means for releasing the air pressure in the coupling while he was working near it; (4) in failing to furnish sufficient personnel safely to perform the duties required of the plaintiff; (5) in failing to instruct him as to how to perform his duties safely; (6) in applying excessive and dangerous air pressure to the coupling which burst apart; (7) in failing to provide adequate means to inspect the equipment and to discover and replace defective equipment; and (8) in failing to guard against the likelihood of an internal explosion in the air hose.

The only evidence at the trial bearing on the issue of liability was that of the plaintiff himself. His testimony showed that he was fifty-one years of age; that he had been a machinist and a railroad man for about thirty-eight years; that he started to work for the defendant in August, 1948, as a car inspector and car repairman; that on December 29, 1950, his working hours were from 12:30 A.M. to 8:30 A.M.; that for two days each week the main part of his work was stopping air leaks and steam-heat leaks, and putting brake shoes on cars; that on other days he worked on the repair track, repairing cars and making necessary replacements, and in the yards and at the Union Station in St. Louis doing similar work.

The plaintiff's evidence relative to what occurred on December 29, 1950, was that he went out in the defendant's yards to Wabash No. 24, a train of six streamlined passenger cars, also known as the Blue Bird; that the six cars were coupled together with their air brakes set and were on Track No. 9, which runs east and west and slopes "quite a bit" toward the east; that he put blocks under the wheels of the cars to keep them from rolling when the brakes were released; that the brakes are released in repairing the train; that the blocks are made of crossties and are about ten or twelve inches long; that they are laid crossways over the rail and under the wheels; that generally one block is laid under the rear wheel of each car on one side of the train; that he found that all of

the steam, air, and signal lines of the train were connected except between the last two cars at the east end of the train; that the last car was an observation car, No. 1601, and the car next to it a diner, car No. 51; that the air hose connection of the diner had ice all over it; that the coating of ice was "a whole lot bigger" than the head of the air hose coupling; that in coupling up the air hose he beat the ice off of it and then made the coupling; that he also coupled up the steam-heat hose and the signal line between the two cars; that after doing that he connected a steam line located in the yard near the west or head end of the train to the steam line of the train at that end, and connected the air line of the train with the compressed air line in the yard at the rear or east end of the train; that there were two compressed air lines in the yard, a high pressure line and a low pressure line; that the low pressure line was broken down and could not be used; that the pressure in the high pressure line was around 180 pounds; that after putting on the air the plaintiff started to go around the train; that he found a steam heat leak between cars Nos. 1601 and 51, the two rear cars of the train; that "the steam had blown plumb out through the top of the train" by the time he got there; that he tapped on the steam heat coupling with his hammer to close the leak; that there was so much steam blowing out that he was unable to tell whether or not there was also a leak in the air hose coupling.

The plaintiff testified that while he was working to tighten the steam heat connection, the rear car moved about five inches all of a sudden; that the air hose coupling came apart and hit him across the leg and he fell down; that he did not know whether he hit the air hose coupling with his hammer or not; that he had noticed that the air hose coupler on car 51, the diner, had a gasket in it that was worn "a little bit" but which he felt did not need replacement; that if he had hit the air hose coupler on top with his hammer, it would have had no effect on it; that after he had knocked the ice off the one end of the coupler, he noticed nothing wrong with it;

that it was three or four minutes after he had put the air in the train-line before the accident happened; and that a jar might knock the coupler apart.

Upon being asked what he thought caused the air hose coupling to separate, the plaintiff said that he could not tell "unless when that car [the rear car] moved it jerked it [the air hose coupling] apart." He said further that he figured that "the slack in the car is what made the car jump over the block of wood" when the brakes released; that he thought it was the sudden movement of the car that jerked the air line coupling apart; that if the coupler was put together properly it would lock, but a sudden jar from the movement of the train, or striking the coupler with a hammer, might knock the coupler loose; that the proper and only safe way to tighten such a coupling is to shut the angle cock between the cars and cut off the air, and that he knew that long before the accident; that when he coupled up the air hose he thought the slack was out of the coupler which held the cars together; that in order to couple the air hose he had had to pull to get the ends together; and that when the hose is slack the slack between the cars is bunched.

The plaintiff testified that while he was hitting the steam heat hose he might have tapped the air hose coupling; and, also, that he figured that ice on the air hose coupling and the hose being stretched out caused the air leak, although he thought he got the ice all off before making the coupling.

It appears that after the accident the plaintiff while in the hospital gave a statement to one of the agents of the defendant to the effect that he had discovered an air leak in the air hose coupling between the two last cars of the train, that he had tapped the coupler with his hammer in order to tighten it, and that it came apart. At the trial the plaintiff testified that he had no recollection of making such a statement, and that his physical condition, when the statement was taken, was such that about half of the time he did not know what he was doing.

896

■ It is apparent that the plaintiff's evidence made a rather unsatisfactory case on the issue of liability. He points to no specific act or omission of the defendant indicating that there was a lack of due care on its part. On this appeal, however, the plaintiff is entitled to the benefit of every inference which reasonably can be drawn from the evidence viewed in the light most favorable to him. Hoyt v. Clancey, 8 Cir., 180 F.2d 152, 154 and cases cited.

In Wilkerson v. McCarthy, 336 U.S. 53, 61, 69 S.Ct. 413, 417, 93 L.Ed. 497, the Supreme Court said:

"Much of respondents' argument here is devoted to the proposition that the Federal Act [Federal Employers' Liability Act] does not make the railroad an absolute insurer against personal injury damages suffered by its employees. That proposition is correct, since the Act imposes liability only for negligent injuries. Cf. Coray v. Southern Pac. Co., 335 U.S. 520, 69 S.Ct. 275 [93 L.Ed. 208]. But the issue of negligence is one for juries to determine according to their finding of whether an employer's conduct measures up to what a reasonable and prudent person would have done under the same circumstances. And a jury should hold a master 'liable for injuries attributable to conditions under his control when they are not such as a reasonable man ought to maintain in the circumstances', bearing in mind that 'the standard of care must be commensurate to the dangers of the business.' Tiller v. Atlantic C. L. R. Co., 318 U.S. 54, 67, 63 S.Ct. 444, 451, 87 L.Ed. 610."

The court also said in that case, page 63 of 336 U.S., at page 418 of 69 S.Ct., 93 L.Ed. 497:

"In reaching its conclusion as to negligence, a jury is frequently called upon to consider many separate strands of circumstances, and from these circumstances to draw its ultimate conclusion on the issue of negligence. Here there are many arguments that could have been presented to the jury in an effort to persuade it that the railroad's conduct was not negligent, and many counter arguments which might have persuaded the jury that the railroad was negligent."

■ It is safe to say that in a case such as the one before us, it is unwise for a trial judge to direct a verdict at the close of the plaintiff's evidence. We think that, even though the trial court is of the opinion that the evidence will not support a verdict for the plaintiff, the court should ordinarily reserve its ruling on a motion for a peremptory instruction until after verdict. That course will usually hasten the ultimate termination of the litigation and best serve the interests of both parties. The jury's view of the sufficiency of the evidence may coincide with that of the court. If it does not, the court, despite the verdict, can enter judgment for the defendant. An appeal from such a judgment, entered after verdict, will usually terminate the controversy one way or the other, and avoid a retrial with its resulting delay, trouble and expense and the possibility of a second appeal. Compare, Moore v. Chesapeake & Ohio Railway Co., 340 U.S. 573–574, 71 S.Ct. 428, 95 L.Ed. 547.

■ In view of the liberal rules which apply to actions brought under the Federal Employers' Liability Act, and in view of the absence of any explanatory evidence adduced by the defendant, we think it is not inconceivable that a jury could have inferred that the last two cars of the train should have been completely coupled up when they were first set out, in order to prevent the formation of ice on the couplers of the air hose during freezing weather, or that the defendant should have furnished the plaintiff with more adequate means of removing ice from the air hose coupling or of preventing the movement of the cars on the sloping track, or with an air line in the yard with lower air pressure. This is not saying that upon a retrial of this case, when all the evidence is in, the plaintiff will have made a case for the jury. We make no predictions in that regard and go no further than to say that in our

opinion the defendant was not entitled to a directed verdict at the close of the plaintiff's evidence.

We think that implications reasonably to be drawn from the cases of Stewart v. Southern Railway Co., 315 U.S. 283, 285–286, 62 S.Ct. 616, 86 L.Ed. 849; Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916; and Wilkerson v. McCarthy, supra, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497, support our conclusion in this case. It is possible that the more recent case of Moore v. Chesapeake & Ohio Railway Co., supra, 340 U.S. 573, 577–578, 71 S.Ct. 428, 95 L.Ed. 547, may indicate a change in the attitude of the Supreme Court with respect to the quality of proof which will sustain a verdict for the plaintiff in a case brought under the Federal Employers' Liability Act, but none of that court's former decisions dealing with the sufficiency of evidence in such cases have been disapproved by it, and we may not disregard them.

The judgment appealed from is reversed, and the case is remanded for a new trial.