**William J. SCHNEIDER, Plaintiff,**

v.

**CHRYSLER MOTORS CORPORATION, a corporation, and Pittsburgh Plate Glass Company, a corporation, Defendants.**

**William J. SCHNEIDER, Plaintiff,**

v.

**CHRYSLER CORPORATION, a corporation, Defendant.**

**Civ. Nos. 02157, 02486.**

United States District Court
D. Nebraska.

March 31, 1967.

---

Frank B. Morrison, Jr., of Eisenstatt, Morrison, Higgins, Miller, Kinnamon & Morrison, Omaha, Neb., for plaintiff.

L. J. Tierney, of Cassem, Tierney, Adams & Henatsch, Omaha, Neb., for defendants, Chrysler Motors and Chrysler Corp.

Robert Fraser, of Fraser, Stryker, Marshall & Veach, Omaha, Neb., for defendant, Pittsburgh Plate Glass Co.

## MEMORANDUM AND ORDER

RICHARD E. ROBINSON, Chief Judge.

THIS MATTER comes before the Court on motions for judgment notwithstanding the verdict. The motions were filed on behalf of each defendant; Chrysler Motors Corporation [Civil 02157, filing #57]; Pittsburgh Plate Glass Company [Civil 02157, filing #53]; and Chrysler Corporation [Civil 02486, filing #24].

Plaintiff, William J. Schneider, filed separate complaints; one against Chrysler Motors Corporation [herein called Chrysler Motors] and Pittsburgh Plate Glass Company [herein called Pittsburgh], and the other against Chrysler Corporation [herein called Chrysler]. These actions involved common questions of law and fact and were consolidated for trial.

The facts were essentially undisputed. The plaintiff purchased a 1960 Valiant automobile in August of 1960 from a dealer in Fargo, North Dakota. He owned and operated the automobile for approximately three years prior to the accident which gave rise to this suit. On July 26, 1963 at about 10:30 P.M. the plaintiff went to his garage to close the overhead door for the night. Finding that the rear of the auto protruded too far to permit closing the door, Mr. Schneider went into his garage intending to move the car forward. He approached the front of the car on the driver's side. Upon reaching the front door he bent down to see if his keys were in the ignition, and at that time his right eye came in contact with the left front vent window of his Valiant automobile. The impact pierced the eyeball and ultimately caused the loss of that eye.

Mr. Schneider had driven the car that day and had left the vent window open himself. He was familiar with his garage, but did not turn on the interior

lights. Some light entered the garage from a window and the open door, but it was at best only dimly lighted.

The automobile was designed and manufactured by Chrysler and distributed by Chrysler Motors. Pittsburgh manufactured windows for 1960 Valiant automobiles including the wing vent window involved in this action. Specifications of the windows were submitted to Pittsburgh by Chrysler, and the completed product was shipped to Chrysler for assembly into the automobile. Plaintiff alleges in his complaints that Chrysler was negligent in designing the vent windows and failing to inspect the windows upon completion; that Pittsburgh negligently manufactured the vent windows in failing to conform to specifications submitted to by Chrysler; and that Chrysler Motors was negligent in distributing the automobiles with defective windows. Plaintiff's case at trial was largely devoted to showing that Pittsburgh did not follow the specifications submitted to it by Chrysler in manufacturing wing vent windows. There was conflicting evidence on the question, but for purposes of this motion it must be assumed that the windows did not conform.

▮ Plaintiff's case in negligence fails for several reasons only two of which it is necessary to discuss here. The first and most obvious failure arises from defendants' proof of plaintiff's contributory negligence in a degree more than slight in comparison to the negligence of each of the defendants. The jury, while finding that the negligence of plaintiff was slight and that the negligence of Pittsburgh Plate Glass was gross in comparison [Question #11 of Special Verdict], went further and determined that, using 100% as the total combined negligence of Pittsburgh and the plaintiff, the percentage attributable to the plaintiff was 40% [Question #12 of Special Verdict]. In a similar comparison as to Chrysler the jury concluded that plaintiff's negligence was 20%. The jury found no gross-slight relation between the negligence of Chrysler Motors and plaintiff. From these findings by the jury the Court could conclude that plaintiff's contributory negligence would bar recovery on a theory of negligence. However, we find as a matter of law that no negligence was shown as to any of the defendants. Assuming that, from the evidence presented, one might reasonably conclude that Pittsburgh did not comply with its contractual obligation with Chrysler to supply vent windows of required specifications, it does not necessarily follow that the three defendants were negligent toward this plaintiff by using the windows actually produced. We fail to see the distinction from the case where Chrysler's specifications called for a window of the exact specifications produced by Pittsburgh. If there would have been no negligence in designing a window as was actually used, then we can see no negligence in using windows so produced. The question thus becomes whether the window in question fell below the standard established by law for the protection of others against an unreasonable risk of harm. No negligence is shown unless the danger was known or should have been known. The cutting potential of the window is anything but obvious and the accident which gave rise to this suit appears to be unique. Nor was the window shown to create an unreasonable risk.

Other courts have denied recovery in similar situations on another equally applicable basis; the requirement of duty. The words of Justice Nourse in Hatch v. Ford Motor Company, 163 Cal.App.2d 393, 329 P.2d 605, are particularly appropriate here.

"If we were to hold that there was a duty to render a vehicle safe to collide with rather than simply a duty to so manufacture it as to make it safe for use for which it is intended, i. e., to move upon the highways or to be safely parked, that duty would apply not only to ornaments such as that in question here but to functional parts of the vehicle. * * * In other words, each case in which a person collided with a standing vehicle and received some injury from a part of the vehicle which

injury he might not have sustained had the vehicle been constructed in some other manner would raise a question of fact as to whether the manufacturer was liable to that person. In effect the triers of the facts would be the arbiters of the design of automobiles and the standard of design would be determined not when the automobile was manufactured but after the occurrence of an accident."

The Court found there was no such duty.

Plaintiff relies heavily on the case of Ford Motor Company v. Zahn, 265 F.2d 729 [8th Cir., 1959]. That case is easily distinguishable from the one at bar. In that case there was a finding that a *defect* in the interior of an auto presented an unreasonable risk of harm to persons using the auto *for the purpose for which it was intended.*

The Court there observed that emergency stops occur in the normal operation of an automobile. The manufacturer is therefore charged with the duty of taking reasonable precautions to protect a passenger who might be thrown against the dashboard on such occasions. The sharp and jagged edge on the dashboard ashtray was found to create a foreseeable risk of harm to persons using the auto for its intended purpose. If the wing vent window in the present case would have protruded inward, and the injury would have occurred during the normal operation of the vehicle, plaintiff's analogy to the *Zahn* case might be convincing. However, the only common elements which the two cases have as they presently stand are a collision of an eye with some part of an automobile and a resulting loss of the eye.

■ In the alternative plaintiff alleges that defendant breached its implied warranty "that the said automobile was fit for the purpose intended and of merchantable quality * * * " We would first express our serious doubts as to whether the privity requirement in non-food warranty cases has been abandoned by the Nebraska Supreme Court. Asher v. Coca Cola Bottling Co., 172 Neb. 855, 112 N.W.2d 252 [1961]. In view of the evidence, however, that issue need not be reached. We find as a matter of law that defendant's implied warranty of merchantability did not include a warranty that the window glass could not, under any conditions, cut any part of the human body. A vent window in normal use may protrude from the side of the vehicle. The defendants could reasonably anticipate that the glass would come into contact with the human body. It seems obvious that if the window could not be used to perform its normal function without danger to the user there would be a breach of the warranty. It was conclusively shown on trial that the vent window could be safely used for the purpose for which it was intended. The plaintiff himself used the auto and the window for a period of three years without incident. Defendants' counsel demonstrated, and an inspection of the exhibit confirmed, that the corner of the window complained of was not a "cutting edge" in any usual sense.

Any object can cause injury if improperly used. Even accepting the testimony that a different design would have averted the injury, we cannot equate misfortune with responsibility. A tragic result, without more, is no basis for imposing liability.

As plaintiff has failed to show defendants' acts to be a breach of duty or to comprise an unreasonable risk of harm; his case in negligence cannot stand. As plaintiff has shown no breach of any implied warranty, his alternative claim must likewise fall. Accordingly,

It is ordered that the motions for judgment notwithstanding the verdict made by Chrysler Motors, Chrysler Corporation and Pittsburgh Plate Glass should be and are hereby sustained.