**William J. SCHNEIDER, Appellant,**

v.

**CHRYSLER MOTORS CORPORATION, a Corporation, and Pittsburgh Plate Glass Company, a Corporation, Appellees.**

**William J. SCHNEIDER, Appellant,**

v.

**CHRYSLER CORPORATION, a Corporation, Appellee.**

**Nos. 18932, 18933.**

United States Court of Appeals Eighth Circuit.

Oct. 2, 1968.

---

Frank B. Morrison, Jr., of Eisenstatt, Morrison, Higgins, Miller, Kinnamon & Morrison, Omaha, Neb., for appellant.

L. J. Tierney, of Cassem, Tierney, Adams & Henatsch, Omaha, Neb., for appellee, Chrysler Motors Corp.

Robert G. Fraser, of Fraser, Stryker, Marshall & Veach, Omaha, Neb., for appellee, Pittsburgh Plate Glass Co.; Joseph K. Meusey, Omaha, Neb., on the brief.

Before BLACKMUN, MEHAFFY, and GIBSON, Circuit Judges.

GIBSON, Circuit Judge.

Plaintiff William J. Schneider appeals from judgments entered n. o. v. by the United States District Court of Nebraska on a jury verdict of $40,000 for injuries and damages arising out of laceration of his right eye when it came into contact with the left front vent window of his 1960 Valiant automobile.[1] The automobile was manufactured by defendant Chrysler Corporation, and distributed by defendant Chrysler Motors Corporation. The window vent was made by defendant Pittsburgh Plate Glass Company on specifications furnished by Chrysler Corporation. This is a diversity case in a requisite jurisdictional amount, and the substantive law of Nebraska applies, at least to Schneider's claim of recovery under a negligence theory.[2] The District Court found as a

---

1. The decision of Chief Judge Richard E. Robinson is reported at 266 F.Supp. 115 (D.C.Neb.1967).

2. Schneider moved to amend his complaint by asserting that the law of North Dakota, where the sale of the Valiant was consummated, applied to the warranty aspects of the case. The District Court in considering the motion expressed it was "inclined to believe that that position is sound." The question of whether Nebraska or North Dakota law applies to the warranty aspects of this litigation would be of significance only if privity were a controlling issue as the Supreme Court of North Dakota has expressly abolished the requirement of privity between manufacturer and buyer.

Lang v. General Motors Corporation, 136 N.W.2d 805 (N.D.1965). The privity requirement in non-food cases has not been specifically abandoned by the Supreme Court of Nebraska. See, Asher v. Coca Cola Bottling Company, 172 Neb. 855, 112 N.W.2d 252 (1961). While Schneider argues persuasively that it is not likely that Nebraska would consider privity a prerequisite in a breach of warranty action, and we are inclined to agree with him, it was not necessary for the District Court to decide whether Nebraska would require privity, or whether North Dakota law applied to the breach of warranty claim in this case, in disposing of the issue. We likewise find it unnecessary to reach these questions.

matter of law that no negligence was shown as to any of the defendants constituting an unreasonable risk of harm to the plaintiff; that defendants had no duty to foresee the risk of harm created by the vent window being used in the manner which resulted in this accident; and that defendants did not breach any implied warranty of merchantability.[3] We affirm the judgments of the District Court.

Schneider purchased a new 1960 Valiant automobile in August 1960 from a Plymouth-Chrysler dealer in Fargo, North Dakota, and owned and operated the automobile for approximately three years prior to the accident which gave rise to this litigation. On July 26, 1963, Schneider and his wife had been sitting in the front yard of their home, in Columbus, Nebraska, when Schneider around 10:30 p. m. went to his garage to close the overhead door for the night. Upon finding that the rear end of the Valiant protruded too far to permit closing of the garage door, Schneider went into the garage intending to move the car forward. Schneider proceeded to a point approximately one foot away from the left side of the auto, slightly ahead of the front door handle and nearly opposite the hinges on the left side of the door, felt in his pockets for the keys to the auto and found he did not have them. He then turned and leaned forward, bending his knees slightly to crouch and peer, in order to look into the car to see if the keys were in the ignition switch. He felt a sharp pain in his right eye produced by his eye coming into contact with the apex of the left front vent window which was open about 55–70 degrees. Schneider testified he did not see the vent window before the accident. His left hand was hanging free by his side, and his right hand was resting on the sill portion of the window on the door.

The lighting in the garage at the time of the accident was provided solely from external sources. Schneider did not utilize either of two switches in the garage that would illuminate the garage lights, one of which was located on the rear wall of the garage, the other on the front of the garage. Neither did he open the door of the Valiant which would have caused the dome light to come on. In front of the Schneider home there was an electric yard light burning across the street, in addition to two street lights that were operating. The light in the kitchen of the Schneider home was on and could be seen coming in through the door toward the rear of the garage that connects the kitchen and the garage. A neighbor to the right of the Schneider home had a back yard light on, and the house immediately to the rear had a back yard light on. The window in the garage was on the side wall and was constructed of glass blocks.

Schneider was examined by Dr. Maynard A. Wood of Lincoln, Nebraska, who testified that the examination revealed a severe through-and-through laceration of Schneider's right eyeball from right to left with subsequent loss of contents and hemorrhage. Dr. Wood stated that the injury was not a puncture wound, but was a cutting wound from one side of the eyeball to the other across the cornea. Despite treatment there was a gradual deterioration of the eye, and on February 6, 1964, the eye was removed and prosthesis was inserted inside the muscle cone.

Schneider alleged negligence on the part of Chrysler Corporation in designing the wing vent window, in improper and inadequate testing of the vent window, in failing to warn of dangers involved in using the defective vent window and in manufacturing and installing the vent window. Schneider alleged negligence on the part of Pittsburgh Plate Glass Company in failing to warn, in failing to properly test, in failing to manufacture a product in conformity with the specifications of Chrysler Cor-

---

3. The District Court also said " * * * [T]he Court could conclude that plaintiff's contributory negligence would bar recovery on a theory of negligence." 117 of 266 F.Supp.

poration, and in producing and manufacturing the vent window. Schneider alleged negligence on the part of Chrysler Motors Corporation in distributing the Valiant with a defective vent window. In addition, Schneider alleged all three defendants breached an implied warranty that the Valiant was reasonably fit for the purpose intended and of merchantable quality.

Schneider produced expert testimony of a consulting engineer that the left wing vent window produced by Pittsburgh Plate Glass Company did not conform to specifications submitted by Chrysler Corporation, and that the wing vent window had a sharp edge not in compliance with the industry's custom and practice that does not permit sharp edges on exposed glass for the safety of people using vehicles. Further, Dr. Wood testified that the left wing vent window could produce the type of injuries sustained by Schneider, but the right wing vent window of the Valiant could not.

The jury found that all three defendants breached their implied warranties. In applying Nebraska's comparative negligence statute, the jury found the negligence of Chrysler Corporation and Pittsburgh Plate Glass Company to be "gross" in comparison to Schneider's negligence which was found to be "slight"; the negligence of Chrysler Motors Corporation was found not to be "gross" in comparison with Schneider's negligence. Using 100 per cent as the total combined negligence of Schneider and Chrysler Corporation, the jury found 20 per cent of the total combined negligence attributable to Schneider. With regard to Pittsburgh Plate Glass Company, the jury found 40 per cent of the total combined negligence attributable to Schneider.[4]

The District Court, in sustaining the motions of Chrysler Corporation, Pittsburgh Plate Glass Company and Chrysler Motors Corporation for judgment notwithstanding the verdict, noted that from the jury findings "* * * the Court could conclude that plaintiff's contributory negligence would bar recovery on a theory of negligence." The Court based its holding, however, on the finding that "* * * as a matter of law * * * no negligence was shown as to any of the defendants." The Court further held that "* * * as a matter of law * * * defendant's implied warranty of merchantability did not include a warranty that window glass could not, under any conditions, cut any part of the human body," and found that it "* * * was conclusively shown on trial that the vent window could be safely used for the purpose for which it was intended." 117, 118 of 266 F.Supp.

On appeal Schneider contends the District Court erred (1) in finding that Schneider failed to prove negligence on the part of Chrysler Corporation or Pittsburgh Plate Glass Company; (2) in finding that Schneider failed to show that the vent window was unsafe for the purpose intended and that there had been no breach of implied warranty; and (3) in finding that Schneider's contributory negligence could bar recovery on his theory of negligence. Schneider also argues (4) that privity is no longer a requirement in a breach of implied warranty action whether North Dakota or Nebraska law is applied, and (5) that contributory negligence is not a defense to an action for breach of warranty.

4. The jury did not make a percentage finding as to the combined negligence of Schneider and Chrysler Motors Corporation, since the jury found that the negligence of Chrysler Motors was not "gross" in comparison to Schneider's negligence. Schneider admitted at oral argument that the adverse jury determination regarding his negligence claim against Chrysler Motors is not contested in this appeal. The jury's findings on the negligence claim would not affect the finding that Chrysler Motors breached an implied warranty. The District Court, however, included Chrysler Motors in granting judgments notwithstanding the verdict, which would include any breach of implied warranty. 266 F.Supp. at 118.

In affirming the decision of the District Court, we believe the first two issues framed by Schneider to be dispositive; hence, we do not reach the latter three contentions advanced by him.

▮ The broad question presented on this appeal is whether the District Court properly granted defendants' motions for judgment notwithstanding the verdict, pursuant to Rule 50(b), Fed.R. Civ.P. This motion cannot be granted unless as a matter of law the opposing party failed to make a case and a verdict in the movant's favor should have been directed. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940); 2B Barron and Holtzoff, Federal Practice and Procedure § 1079, p. 414 (1961). The standard in considering a motion for judgment notwithstanding the verdict is the same as the standard for directing a verdict. Compton v. United States, 377 F.2d 408, 411 (8 Cir. 1967); 2B Barron and Holtzoff, Federal Practice and Procedure § 1079, p. 412 (1961). Under either motion the question of sufficiency of the evidence to support a jury verdict is raised. The problem arises, in a diversity case in a federal court, whether the state or federal test of sufficiency of the evidence to support a jury verdict is to be applied.

▮ The Supreme Court has twice declined to decide whether state or federal standards are controlling. Mercer v. Theriot, 377 U.S. 152, 156, 84 S.Ct. 1157, 12 L.Ed.2d 206 (1964); Dick v. New York Life Insurance Co., 359 U.S. 437, 444–445, 79 S.Ct. 921, 3 L.Ed.2d 935 (1959). Prior to Dick, supra, this Circuit was committed to the application of state law in diversity cases where sufficiency of the evidence was at issue. See, Continental Can Company v. Horton, 250 F.2d 637, 640 (8 Cir. 1957); Stofer v. Montgomery Ward & Company, 249 F.2d 285, 289 (8 Cir. 1957); Clay County Cotton Co. v. Home Life Ins. Co. of New York, 113 F.2d 856, 861 (8 Cir. 1940). The current approach taken by this Circuit to this problem was stated by Judge Matthes in Jiffy Markets, Inc. v. Vogel, 340 F.2d 495, 498 (8 Cir. 1965): [5]

"Following the cue of the Supreme Court in Dick, we have found it unnecessary to reach out and decide this question in a number of cases, e. g. Ford Motor Company v. Mondragon, 271 F.2d 342, 345 (8 Cir. 1959); Bennett v. Wood, 271 F.2d 349, 351 (8 Cir. 1959); Lewis v. Nelson, 277 F.2d 207, 209, 210 (8 Cir. 1960); Wray M. Scott Co. v. Daigle, 309 F.2d 105 (8 Cir. 1962); Hanson v. Ford Motor Co., 278 F.2d 586 (8 Cir. 1960)."

It was unnecessary to decide whether the federal or state standard of sufficiency applied in the cases cited in Jiffy Markets, supra, because in several cases the parties assumed the state standard was applicable and in all cases the state and federal standards were substantially sim-

---

5. According to Chief Judge Lumbard in Mull v. Ford Motor Company, 368 F.2d 713, 716, f. n. 4 (2d Cir. 1966), the majority of circuits have held that the federal standard should be applied where the issue is the sufficiency of the evidence required to take the case from the jury. Curry v. Pyramid Life Insurance Company, 271 F.2d 1 (8 Cir. 1959), is considered as an earlier Eighth Circuit decision enunciating adherence to the majority view; we think, however, that Curry, supra, dealt with a different albeit related, issue: jury trial as a matter of right under Rule 38, Fed.R. Civ.P.

Chief Judge Lumbard correctly notes:

"The Eighth Circuit has more recently left the question open however, see, e. g., Jiffy Markets [, Inc.] v. Vogel, 340 F.2d 495, 498 (1965); Hanson v. Ford Motor Co., 278 F.2d 586 (1960), without mention of the Curry case, supra."

Since Judge Matthes authored the decision in the Curry case, as well as the decision in Jiffy Markets, and chose not to consider the former decision in stating the Eighth Circuit view in the latter decision, our analysis that Curry does not speak to the sufficiency issue is fortified. In short, the analysis contained in Jiffy Markets is not inconsistent with the rationale of Curry.

ilar.[6]  In the case at bar, the parties apparently assume the state standard applied.  And, as noted by us in Grand Island Grain Company v. Roush Mobile Homes Sales, Inc., 391 F.2d 35, 41 (8 Cir. 1968), the standard applied in Nebraska to test the sufficiency of the evidence to support a jury verdict is substantially the same as the federal standard applied by this Court.

■■■     The Supreme Court of Nebraska in Presho v. J. M. McDonald Co., 181 Neb. 840, 151 N.W.2d 451, 453 (1967), in reviewing a motion for a directed verdict said:

"A motion for directed verdict or its equivalent must for the purposes of decision thereon be treated as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed.  Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence."

The view of this Court is substantially similar; as expressed in Thompson v. Lillehei, 273 F.2d 376, 378 (8 Cir. 1959):

"In testing the legal sufficiency of the evidence to make a submissible case, * * * we are required to view and consider all of the evidence from the standpoint most favorable to plaintiffs, and give to them the advantage of every fair and reasonable intendment that the evidence can justify."

However, a plaintiff " * * * is not entitled to the benefit of unreasonable inferences, or inferences at war with undisputed facts."  Lewis v. Nelson, 277 F.2d 207, 210 (8 Cir. 1960).

6.  For the latest case in this Circuit applying the state test, where the parties appear to rely on the state standard and the state standard is substantially the same as the federal standard, see State Farm Mutual Automobile Insurance Company v. Borg, 396 F.2d 740 (8 Cir. 1968).

7.  The right wing vent window was manufactured for Chrysler Corporation by the Perma-Glass Corporation which, exclud-

■■■     With the evidence viewed in the above perspective the trial court must make the following determination as stated by the Supreme Court of Nebraska in Raff v. Farm Bureau Insurance Company of Nebraska, 181 Neb. 444, 149 N.W.2d 52, 56 (1967):

"In every jury trial, before the case is submitted there is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence, but whether there is any evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed."

Implicit in the above cases is the doctrine that "[t]he propriety of granting or denying a motion for a directed verdict is tested both in the trial court and on appeal by the same rule."  2B Barron and Holtzoff, Federal Practice and Procedure § 1075, p. 378 (1961).

With the above principles in mind, we proceed to examine the theories of recovery and evidence advanced by Schneider to determine if the District Court properly granted defendants' motions for judgment notwithstanding the verdict. For purposes of reviewing the motions, we must assume that Schneider's evidence showed that Pittsburgh Plate Glass Company did not follow the specifications submitted to it by Chrysler Corporation in manufacturing the left wing vent window; that the left wing vent window was capable, by virtue of a microscopic cutting surface, of lacerating the eyeball of an individual coming into contact with it, while the right wing vent window would not produce the type of injury such as that sustained by Schneider.[7]

ing Pittsburgh Plate Glass Company, was the only company that made wing vent windows for 1960 Valiant automobiles.  There was no variance between specifications submitted by Chrysler Corporation to Pittsburgh Plate Glass Company for wing vent windows on 1960 Valiant automobiles and specifications for the same windows submitted by Chrysler Corporation to Perma-Glass Corporation.

Assuming the left wing vent window did not conform to specifications, and coupling that assumption with the occurrence that the vent window did in fact lacerate Schneider's eyeball with resultant severe damage, there remains the overriding question aptly posed by the District Court at 117 of 266 F.Supp.: "The question thus becomes whether the window in question fell below the standard established by law for the protection of others against an unreasonable risk of harm." The question posed is paramount because it raises the initial hurdle in proving a cause of action based on a theory of negligence.

Schneider relies on Ford Motor Company v. Zahn, 265 F.2d 729 (8 Cir. 1959); Swearngin v. Sears Roebuck & Company, 376 F.2d 637 (10 Cir. 1967); and, Blitzstein v. Ford Motor Company, 288 F.2d 738 (5 Cir. 1961).[8] In Ford Motor Company v. Zahn, supra, this Court affirmed judgment rendered in behalf of an automobile guest, Zahn, who lost sight in one eye when his eye struck a protruding burr on an ashtray located in the dashboard of an automobile manufactured by Ford Motor Company—a failure to exercise reasonable care in inspection to discover a defective part that caused a foreseeable injury.

In Swearngin v. Sears Roebuck & Company, supra, plaintiff recovered a verdict for the loss of an eye which was penetrated by a stick thrown from a power lawn mower manufactured by Sears' subsidiary. Plaintiff was riding in an automobile approximately 26 feet from the mower when the accident occurred. The trial court entered judgment notwithstanding the verdict, but the Tenth Circuit reversed and held the issue of negligence, including foreseeability of some injury or harm, was properly sub-

mitted to the jury under Kansas law. 376 F.2d 642. Schneider deems his case analogous to the Zahn case and the Swearngin case. Blitzstein v. Ford Motor Company, supra, held a latent defect in a gasoline tank located inside the trunk of an English Ford presented a jury issue on whether the distributor was negligent in failing to exercise reasonable care to inform the buyer of the alleged inherently dangerous condition in the automobile, which had exploded while being operated by the purchaser.

In Larsen v. General Motors Corporation, 391 F.2d 495 (8 Cir. 1968), this Court reviewed the duty owed by an automobile manufacturer with regard to the design of its products and concluded that manufacturers are not insurers but have a duty to use reasonable care in design of vehicles to avoid subjecting the user to an unreasonable risk of injury in the event of a collision, regardless of the fault of the user; and that collisions were foreseeable. In analyzing the question of duty, this Court held at 502 of 391 F.2d:

"While automobiles are not made for the purpose of colliding with each other, a frequent and inevitable contingency of normal automobile use will result in collisions and injury-producing impacts. * * * These injuries are readily foreseeable as an incident to the normal and expected use of an automobile."

In the Zahn, Larsen and Blitzstein cases, the respective automobiles subjected their users to an unreasonable risk of harm when the automobiles were being used for the purpose intended; the accidents and resultant injuries were held foreseeable.[9] In applying the doctrine of foreseeability the

---

8. While Schneider cites the Blitzstein case in his brief, he does not choose to discuss its applicability to the case at bar.

9. Swearngin v. Sears Roebuck & Company, supra, is not inconsistent with the analysis in Larsen and Zahn. In Swearngin the mower was being used

for the purpose intended and due to the negligent design of the mower, plaintiff was injured. That one would be injured as the result of a stick being thrown by the high speed rotary action of a mower blade was held foreseeable, even though plaintiff was some 26 feet from the mower.

particular injury or precise form of the injury need not be perceived or foreseen, but if there is some probability of harm sufficiently serious that an ordinary reasonable person would take precautions to avoid it then failure to take such care is negligence. As reviewed in Swearngin v. Sears Roebuck & Company, supra, at 642 of 376 F.2d:

> "'* * * [I]t is generally held, regardless of whether the question of "foreseeability" is treated as a problem of "duty," "negligence," or "proximate cause," that it is not necessary that the defendant might or should have foreseen the likelihood of the particular injury or harm, the extent of the harm, or the manner in which it occurred, but that it is only necessary that he should have anticipated that some injury or harm might result from his conduct.' 100 A.L.R.2d 980; Rowell v. City of Wichita, 162 Kan. 294, 176 P.2d 590 (1947) and Atherton v. Goodwin, 163 Kan. 22, 180 P.2d 296 (1947) cited as authority."

In the case at bar, the Valiant automobile was not being used for the purpose intended, and the left wing vent window, even if we assume that it has a microscopic cutting surface, did not present an unreasonable risk of harm.[10] While it might not be incorrect to say that "but for" the cutting surface on the left wing vent window Schneider would not have sustained a lacerated eyeball, such a statement does not serve to fix legal liability for Schneider's unfortunate accident on the manufacturer; it is overstraining a manufacturer's duty to foresee that individuals would inadvertently allow their eye to come into contact with the glass edge of a wing vent window on a parked automobile. A manufacturer is not an insurer and cannot be held to a standard of duty of guarding against all possible types of accidents and injuries. Standards of design and manufacturing skill must be consonant with the stage of the art and the risks to be avoided must be foreseeable.

Defendants, as did the District Court, regard Hatch v. Ford Motor Company, 163 Cal.App.2d 393, 329 P.2d 605 (1958) as in point. In *Hatch,* the Court held no duty was owed a 6-year old child who walked into the radiator ornament of a parked automobile, the ornament piercing his eyeball and causing loss of the eye. The Court held as a matter of law that the risk of plaintiff's injury was not one which the defendant was required to anticipate or to protect against.

The Court in *Hatch* reasoned at 607–608 of 329 P.2d:

> "If, in the present case, the minor plaintiff had stumbled as he approached the vehicle and struck his face against a headlight lens causing it to fracture and lacerate his eye, the question of duty to make the vehicle safe to collide with would be clearly presented under a claim that if the headlight lens had been made of safety glass the plaintiff would not have lost his eye; or, if the plaintiff had col-

10. The defect in the left vent window is not apparent upon visual inspection or in even running the hand over the apex part of the vent. It is not sharp to the feel, will not cut on moderately heavy pressure and is not discernibly defective. It appears to have the tolerance permissible in the stage of the art at the time it was placed upon the Valiant though it might have a microscopic cutting surface not readily discernible. The range and type of accidents that can and will occur are pragmatically infinite but even on hindsight this unfortunate accident is not reasonably foreseeable.

On cross-examination of Schneider's doctor, counsel for one of the defendants tried to cut his wrist by forcibly moving the accused part of the left wing vent across his wrist without inflicting any cut on the wrist. The accused part had no sharp edge in the ordinary sense and use of that term. Many pictures of wing vent windows on different automobiles were produced in evidence, all of which were as pointed or sharper than the left wing vent in question. About 315,000 vent windows of the type in question were manufactured by Pittsburgh Plate Glass Company. Schneider's expert witnesses each admitted on cross-examination that they had never heard of anyone else putting an eye out on a 1960 Valiant vent window.

lided with the side of the car and his eye been impaled upon a radio antenna which had been telescoped so that its point protruded but a few inches above the body of the car, again the claim might be made that this created a danger which might have been avoided by enclosing the radio antenna within the body of the car so as not to protrude therefrom. In other words, each case in which a person collided with a standing vehicle and received some injury from a part of the vehicle which injury he might not have .sustained had the vehicle been constructed in some other manner would raise a question of fact as to whether the manufacturer was liable to that person. In effect the triers of the facts would be the arbiters of the design of automobiles and the standard of design would be determined not when the automobile was manufactured but after the occurrence of an accident."

The accident in *Hatch* appears much more foreseeable than the one in the case at bar and raises a close question on the use of a needlessly protruding ornament as distinguished from an essential protrusion of an opened vent window.

■ While Schneider seeks to distinguish *Hatch*, supra, and other cases on the basis that they involve negligent design, while in the case at bar the injury producing component was alleged to be negligently manufactured, this distinction does not serve to preserve Schneider's case for jury determination. In either instance, the court must first determine if a jury question exists: that there exists a duty or standard of conduct which the jury might reasonably find to have been breached by creation of an unreasonable risk of harm. Here, the District Court correctly determined as a matter of law that there was created no unreasonable risk of harm from which defendants had a duty to protect Schneider.

■ Having determined that judgments notwithstanding the verdict were properly granted with regard to Schnei-

der's claim under a negligence theory, little remains to be said with regard to his breach of implied warranty claim. As noted in 2 Harper and James, The Law of Torts § 28.22, p. 1584 (1956):

> "By and large, the standard of safety of goods is the same under the warranty theory as under the negligence theory. In both actions the plaintiff must show (1) that the goods were unreasonably dangerous * * * for the use to which they would ordinarily be put * * *."

Schneider seeks to invoke the doctrine of strict liability as set forth in Restatement (Second), Torts § 402A (1965):

> "One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property * * *."

Comment *h* to the above cited section states: "A product is not in a defective condition when it is safe for normal handling and consumption."

■ The District Court in its opinion makes an excellent analysis of why Schneider's breach of warranty claim must fail as a matter of law at 118 of 266 F.Supp.:

> "We find as a matter of law that defendant's implied warranty of merchantability did not include a warranty that the window glass could not, under any conditions, cut any part of the human body. * * * It seems obvious that if the window could not be used to perform its normal function without danger to the user there would be a breach of the warranty. It was conclusively shown on trial that the vent window could be safely used for the purpose for which it was intended. The plaintiff himself used the auto and the window for a period of three years without incident. Defendants' counsel demonstrated, and an inspection of the exhibit confirmed, that the corner of the window complained of

was not a 'cutting edge' in any usual sense."

The analysis of the District Court is sound. Judgments notwithstanding the verdict were properly granted with regard to the breach of warranty action, as well as the negligence contentions asserted in these cases.

Judgments affirmed.