Susan **PASSWATERS**, by Donald Passwaters, Her Father and Next Friend, and Donald Passwaters, Appellants,

v.

**GENERAL MOTORS CORPORATION,**
Appellee.

No. 20072.

United States Court of Appeals,
Eighth Circuit.

Jan. 10, 1972.

M. Gene Blackburn, Maxwell, Iowa, and Thomas L. McCullough, Sac City, Iowa, for appellants.

A. Roger Witke, Edward J. Kelly, Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, Iowa, William D. Guthrie, Webster City, Iowa, for appellee.

Before LAY, HEANEY and STEPHENSON, Circuit Judges.

LAY, Circuit Judge.

This is an appeal from a directed verdict granted the defendant General Motors Corporation against Donald Passwaters suing on behalf of himself and his injured daughter, Susan (hereinafter designated as plaintiff). The amended

complaint pleaded both negligent design and strict liability. The accident occurred in the State of Iowa and both parties agree that Iowa law controls. Plaintiff asserts that she was a passenger on a Honda motorcycle being operated on a public highway which collided with a 1964 Buick Skylark automobile. She claims her left leg came into contact with a wheel cover on the rear wheel of the car. She asserts that the wheel cover consisted of unshielded metal flanges or flippers which protruded outward from the base of the cover. These spun when the wheel rotated rapidly. When her leg contacted these metal protrusions as a result of the accident, the suit alleges she received a severe mangling type laceration to her lower calf.

The district court directed a verdict at the close of *all* of the evidence. The court ruled: (1) that the State of Iowa has not adopted the rule of strict liability, (2) that the defendant was not accountable to the injured party for negligent design since there was no foreseeable duty of care extending to her, and (3) that the collision between the motorcycle and the auto constituted an intervening cause thereby insulating the conduct of the manufacturer. We reverse and remand the cause for a new trial.

The collision took place on May 23, 1967, on the open highway near Webster City, Iowa. The driver of the Buick was proceeding in the same direction behind the motorcycle on which plaintiff was a passenger. The evidence shows as the automobile passed the motorcycle the car's right rear side came into contact with the handlebar of the cycle. It is plaintiff's claim that this collision caused her left leg to be thrown into the opening of the rear wheel well containing the protruding spinning blades of the hubcap. She received a severe lacerating injury to the outside of the lower leg just above the ankle. Her doctor described the injury as a "Mangling type injury with multiple lacerations of the foot." The bone was so severely severed that only some soft tissue held her leg together. Her father came to the scene of the colli-

sion and discovered the Buick's right rear hubcap with human flesh and blood on it. The highway patrolman verified the blood on the hubcap.

The wheel cover was designed with the two ornamental blades protruding some three inches from the base of the cover itself. The flippers serve only the purpose of aesthetic design. These spinners or flippers were recessed two and one-eighth inches within the outer perimeter of the car's body shell. Within the five square feet of the car's rear wheel well there was no covering or protection from the blades. When the vehicle moved at a speed of 40 m. p. h. the blades revolved at 568 r. p. m. or nine and one-half revolutions per second. Plaintiff's expert witness, who held a Ph.D. in agricultural engineering and theoretical applied mechanics, testified that the protruding blades moving at high speeds in an unshielded area constituted an unsafe design to persons who might come within their vicinity. Defendant's design experts testified to the contrary observing that the area was recessed within the body shell of the vehicle and therefore not considered dangerous. Defendant contends that there was insufficient evidence to show that plaintiff's leg was actually cut by the hubcap in question.

■ Before passing directly on the issues raised here, we feel constrained to restate certain principles relating to motions for directed verdicts. Judge Sanborn observed in Barnett v. Terminal R. Ass'n of St. Louis, 200 F.2d 893 (8 Cir. 1953), cert. denied, 345 U.S. 956, 73 S.Ct. 938, 97 L.Ed. 1377:

"It is safe to say that in a case such as the one before us, it is unwise for a trial judge to direct a verdict at the close of the plaintiff's evidence. We think that, even though the trial court is of the opinion that the evidence will not support a verdict for the plaintiff, the court should ordinarily reserve its ruling on a motion for a peremptory instruction until after verdict. That course will usually hasten the ultimate termination of the litigation and best serve the interests of

both parties. The jury's view of the sufficiency of the evidence may coincide with that of the court. If it does not, the court, despite the verdict, can enter judgment for the defendant. An appeal from such a judgment, entered after verdict, will usually terminate the controversy one way or the other, and avoid a retrial with its resulting delay, trouble and expense and the possibility of a second appeal. Compare, Moore v. Chesapeake & Ohio Railway Co., 340 U.S. 573–574, 71 S.Ct. 428, 95 L.Ed. 547." 200 F.2d at 896.

We suggest adherence to this procedure is the better approach absent exceptional circumstances not present here.

Turning to the merits of this case, we shall meet the issue of proximate cause first.

The evidence as to whether the protruding flippers were the cause for the severe injury rests on circumstantial proof. The testimony of plaintiff's doctors is based solely on their assumption of the truth as to the mechanism to be proved, i. e., that the leg came in contact with the protruding blades. The doctors' testimony does establish that the alleged defect, the protruding flippers, *could* cause the severe injury sustained. Without additional proof we would agree with defendant that causality was not proven to a reasonable degree of certainty sufficient to allow the jury to pass on the question. On the other hand, defendant's proof that the footrest on the motorbike was a few inches higher than the location of the blades is not conclusive. The evidence showed that the first contact between the automobile and the motorbike was with the side of the car and the cycle's handlebar. There was expert opinion the jury could believe that on impact the rear of the motorcycle would have a tendency to swing into the automobile. As brought out on cross-examination plaintiff's foot could be dislodged on impact from the bike's footrest which the jury could find would put it in contact with the protruding blades. Circumstances of the initial impact, the movement of the vehicles thereafter, the

evidence as to the detachment of the hubcap from the automobile, proof of blood and flesh on the hubcap, and the kind of laceration the young lady received are all important in determining the question of the sufficiency of the evidence. A commonplace proposition of Iowa law, as so noted in the Iowa Rules of Civil Procedure, is stated as follows:

"An issue may be proven by circumstantial evidence; but this evidence must be such as to make the theory of causation reasonably probable, not merely possible, and more probable than any other theory based on such evidence. Generally, however, it will be for the jury or other trier of the facts to say whether circumstantial evidence meets this test." Rules of Civil Procedure, 58 Iowa Code Ann., Rule 344(f)16 (1967).

Applying this rule to the present facts, we find that reasonable minds could differ as to whether plaintiff sufficiently substantiated the causal nexus of the alleged defect with the injury.

The trial court held that the collision between the motorcycle and the automobile was an intervening cause as a matter of law, thereby insulating General Motors' liability for the alleged defective design. We disagree. See Ford Motor Co. v. Zahn, 265 F.2d 729 (8 Cir. 1959). This ruling overlooks this court's position as to the issue of proximate cause where there exists a "second accident." In Larsen v. General Motors Corp., 391 F.2d 495 (8 Cir. 1968), this court observed:

"We, therefore, do not think the automobile industry is being singled out for any special adverse treatment by applying to it general negligence principles in . . . (2) holding that the intended use of an automotive product contemplates its travel on crowded and high speed roads and highways that inevitably subject it to the foreseeable hazards of collisions and impacts." *Id.* at 504.

The Iowa Supreme Court has viewed the issue of intervening cause and proximate cause as generally one of fact for the

triers of fact. In Walton v. Eckhart, 354 F.2d 35 (8 Cir. 1965), we observed:

"In Iowa the jury determines both the existence of an intervening efficient cause and whether it has insulated the negligence of the defendant and replaced it as the proximate and actionable cause of the injury. See Johnson v. Baker, 254 Iowa 1077, 120 N.W. 2d 502, 506 (1963) and cases there cited; Blessing v. Welding, 226 Iowa 1178, 286 N.W. 436 (1939); McClure v. Richard, 225 Iowa 949, 282 N.W. 312 (1938).

"This proposition was aptly expressed by Judge Graven in Chicago & North Western Ry. Co. v. Chicago, R. I. & P. R. R. Co., 179 F.Supp. 33, 55 (N.D. Ia.1959):

" 'The whole trend of the recent decisions of the Iowa Supreme Court is to the effect that, save in exceptional cases, the question of causal connection between the negligence of a person and the injury of which it is claimed to be a proximate cause is one to be determined by the jury and not one to be dealt with as a question of law by the Court. That Court has in its recent decisions tended to emphasize that questions as to proximate cause, independent intervening negligence, and concurrent negligence are peculiarly questions for the trier of facts.' " *Id.* at 37–38.

We come then to the questions of negligence and strict liability.[1]

■ The court in granting defendant's *motion for directed verdict found that* the wheel cover had been "engineered to that degree of safety which rendered unforeseeable an injury to a person *riding on the rear of a motorcycle.*" Passwaters v. General Motors Corp., Civil No. 20072 (N.D.Iowa Oct. 28, 1969). The law is well established that the manufacturer of a vehicle has a duty to use reasonable care in the design of the vehicle. Larsen v. General Motors Corp., supra, (negli-

gent design of Corvair steering assembly); Carpini v. Pittsburg & Weirton Bus Co., 216 F.2d 404 (3 Cir. 1954) (defectively designed brake valve on bus); Grundmanis v. British Motor Corp., 308 F.Supp. 303 (E.D.Wisc.1970) (negligently designed fuel tank on sports car); Dyson v. General Motors Corp., 298 F. Supp. 1064 (D.C.Pa.1969) (defective design of two-door hardtop roof); Brandon v. Yale & Towne Mfg. Co., 220 F.Supp. 855 (E.D.Pa.1963), aff'd 342 F.2d 519 (3 Cir. 1965) (no protective top on fork lift). The Iowa Supreme Court has recognized a manufacturer's liability for negligent design. Bengford v. Carlem Corp., 156 N.W.2d 855 (Iowa 1966); Wagner v. Larson, 257 Iowa 1202, 136 N.W.2d 312 (1965); Calkins v. Sandven, 256 Iowa 682, 129 N.W.2d 1 (1964).

A manufacturer's liability for negligent design has generally been extended to persons outside privity and to non-users. This court long ago observed: "The rule is now established that a manufacturer owes *to the public* a duty, irrespective of contract, to use reasonable care in the manufacture of an automobile. . . ." (Emphasis ours.) Hudson v. Moonier, 94 F.2d 132, 136–137 (8 Cir. 1938), rev'd on other grounds, 304 U.S. 397, 58 S.Ct. 954, 82 L.Ed. 1422, on remand, 102 F.2d 96, 100 (8 Cir. 1939), cert. denied, 307 U.S. 639, 59 S. Ct. 1037, 83 L.Ed. 1520. And as we more recently observed: "We can perceive of no significant difference in imposing a common law duty of a reasonable standard of care in design the same as in construction." Larsen v. General Motors Corp., supra, 391 F.2d at 503. In dealing with the plaintiffs' claims of negligence *against the manufacturers* the court in both *Wagner* and *Bengford* relied on the Restatement (Second) of Torts § 398 (1965). The Restatement speaks of the manufacturer being liable for the "failure to exercise reasonable care in the adoption of a safe plan or design." More importantly, subsumed

---

1. Although defendant attacks the sufficiency of plaintiff's complaint, we think it clear that plaintiff has properly pleaded strict liability and has relied upon this theory from the time of trial.

within the negligence concept expressed in § 398 is the rule of foreseeability. Section 398 reads in part: "liability to others whom he [the manufacturer] should expect . . . to be endangered by its [the product's] probable use. . . ." This language would encompass plaintiffs who are outside the distributive chain. For example, the manufacturer of an automobile should expect the users of the highways to be endangered by a negligently designed brake system or steering system. The court in *Wagner* refers to § 398 as the "modern and proper rule."

Relying on Schneider v. Chrysler Motors Corp., 401 F.2d 549 (8 Cir. 1968), the trial court held that a manufacturer's liability against negligent design should only be extended to the persons classified in the status of the general public by legislative enactment. This statement misconstrues the general rule relating to foreseeable harm.[2] In *Schneider* this court ruled that a plaintiff who was bending down over an opened vent window glass on an automobile and hit his eye on a sharp corner of the glass could not recover. The panel of judges believed that this conduct was not a foreseeable action which the manufacturer could reasonably anticipate. We do not think *Schneider* controlling here. One marked distinction is that plaintiff in the present case was doing nothing different than any ordinary person might be doing under the circumstances. Moreover, in *Schneider* the court reasoned that the window vent was not being used for its intended purpose.[3] Here the wheel cover was obviously used as it was intended. Defendant relies on Hatch v. Ford Motor Co., 163 Cal.App.2d 393, 329 P.2d 605 (1958). In *Hatch* the California Supreme Court held there was no duty owed by a manufacturer to a six year old child who walked into a parked car's radiator ornament.[4] We think significant the court's comment in *Schneider* where it observed:

"The accident in *Hatch* appears much more foreseeable than the one in the case at bar and raises a close question on the use of a *needlessly* protruding ornament as distinguished from an essential protrusion of an opened vent window." (Emphasis ours.) 401 F.2d at 558.

We conclude that although the specific injury and the manner in which it occurred may have been difficult to foresee, nevertheless the unshielded operation of propeller-like blades on the four wheels of an automobile created a high risk of foreseeable harm to the general public.[5] The use of the high-

---

2. Significant here is Comment *i* of Restatement (Second) of Torts § 395 (1965), which reads in part as follows:

"*Persons endangered by use.* The words 'those whom he should expect to be endangered by its probable use' may likewise include a large group of persons who have no connection with the ownership or use of the chattel itself. *Thus the manufacturer of an automobile, intended to be driven on the public highway, should reasonably expect that, if the automobile is dangerously defective, harm will result to any person on the highway, including pedestrian and drivers of other vehicles and their passengers and guests. . . .*" (Emphasis ours.)

3. The Fourth Circuit has cogently observed that "intended use" is simply a convenient adaptation of the test of reasonable foreseeability. Gardner v. Q. H. S., Inc., 448 F.2d 238 (4 Cir. 1971).

4. See generally automobile safety requirements contained in 49 C.F.R. § 571.21 (1971).

5. The term "foreseeability" as used in tort actions has always been both a confusing concept in principle and an elastic one in application. The term is generally used to define scope of duty (2 Harper & James, The Law of Torts, § 18.2 at 1023 et seq. (1956)) and is sometimes confusingly used in discussing proximate or legal cause (2 Harper & James, supra, § 20.5 at 1134). Iowa courts have followed the principle in § 395 of the Restatement (Second) of Torts, explicating the duty that a supplier should recognize in a marketed product "an unreasonable risk of causing substantial bodily harm . . . to those whom the supplier should expect to be in the vicinity of its probable use. . . ." Hawkeye-Security Insurance Co. v. Ford Motor Co., 174 N.W.2d 672, 682 (Iowa 1970),

ways by pedestrians, the frequency of travel by unprotected persons riding on bicycles, motorbikes and motorcycles is a common occurrence. We think it now settled that a manufacturer does have the responsibility to avoid design in automobiles which can reasonably be foreseen as initially causing or aggravating serious injury to users of the highway when a collision occurs. Restatement (Second) of Torts, supra, § 395, Comment *i*. A vehicle cannot be made "accident free," but it is now recognized that a manufacturer does hold a duty to exercise a reasonable degree of care to make the car itself inherently "danger free." We thus conclude there was sufficient evidence to submit the question of negligent design to the jury.

We turn to the issue of the manufacturer's duty under strict liability. At the time of the district court's opinion the doctrine of strict liability had not been adopted by the Iowa Supreme Court.[6] The decision of the district court was handed down on October 28, 1969. On February 10, 1970, the Iowa Supreme Court first applied the rule of strict liability on a manufactured product used in the State of Iowa. Hawkeye-Security Insurance Co. v. Ford Motor Co., 174 N.W. 2d 672 (Iowa 1970). It is conceded by the defendant General Motors that this court must apply the rule of law that is in existence at the time of the appellate court's decision. See, Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 543, 61 S.Ct. 347, 85 L.Ed. 327 (1940); Traveler's Health Assn. v. F. T. C., 262 F.2d 241 (8 Cir. 1959); Grimes Savings Bank v. McHarg, 197 Iowa 1393, 199 N. W. 365 (1924). Thus, accepting the fact that strict liability is now the rule in Iowa we must judge its applicability to the instant case. The focal issue presented has not been passed on by the

citing Bengford v. Carlem Corp., supra, at 864. The difficulty is that "foreseeability" is a hazardous term to define in the abstract and, like so many other doctrines, must turn on the judgmental process. Interesting contrasts may be seen in the findings of "no duty" rendered in *Hatch* and *Schneider*. The *Schneider* panel implied that a sharp protruding ornament like a radiator cap (the facts of *Hatch*) might have been reasonably foreseeable as creating a risk of harm. See Schneider v. Chrysler Motor Corp., supra, 401 F.2d at 558. Today many automobile hood ornaments are flexibly attached to the body of the vehicle, thus giving credence to Justice Holmes' aphorism that the law lives by experience and not by logic. Newspaper reports indicate that people not infrequently receive facial and hand cuts on *sharp edges of protruding window glass* in automobiles (the facts of *Schneider*). Experience could well lead other judges to find on another day that a sharp edge on a car window does create a reasonably foreseeable risk of harm. Such an outcome could be explained by the telling exposure of the judicial mind expressed by Professor Gregory in the University of Chicago Law Review over thirty years ago:

"It all depends upon what factors in the evidence a court is willing to isolate and emphasize for the purpose of making this decision, which process in turn depends pretty much on what outcome the court wishes to achieve or thinks to be politic. This factor in the judgment process, in turn, is not usually a matter of conscious choice but may be a function of the judge's accumulated experience in and observations of the world he lives in." Gregory, Proximate Cause in Negligence—A Retreat from "Rationalization." 6 U.Chi.L.Rev. 36, 50 (1938).

Generally whether a duty exists is a question of law, yet when a difficult determination depends on policy values underlying the "common affairs of life," it is generally thought that the jury is the best deviner of such values. Cf. Railroad Co. v. Stout, 17 Wall. 657, 664, 84 U.S. 657, 664, 21 L.Ed. 745 (1873). Under such a guideline perhaps the mechanics of the foreseeability test would be better left to the jurors' decision. This approach is consistent with the ·maxim that judges should not set aside a jury's verdict simply because they feel another result is more reasonable. Tennant v. Peoria & Pekin Union Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520 (1944).

6. The district court additionally observed: "To allow Sue Passwaters to recover in this case would construe this section as one of strict liability, a doctrine not as yet recognized in Iowa." Passwaters v. General Motors Corp., supra.

Iowa Supreme Court, i. e., whether a user of a highway, within a class of persons who are neither users or consumers of the product may sue the automobile manufacturer under the doctrine of strict liability.

Strict liability is generally viewed as a tort doctrine.[7] It is distinguishable from concepts of negligence in that a plaintiff need not prove whether the defendant had exercised reasonable care under the circumstances. The acceptance of strict liability is based on policy considerations of spreading the risk to the manufacturer as the party financially best able to afford the cost of injuries. As emphasized by the Iowa Supreme Court in *Hawkeye-Security*:

> " 'The purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves. Sales warranties serve this purpose fitfully at best. . . .' " 174 N.W.2d at 683, citing Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, 900 (1962).

It is suggested by some that strict liability more nearly approaches the tort concept of implied warranty stripped of the fictional countenances of privity, notice, disclaimer and reliance. The Restatement (Second) of Torts § 402A

(1965), sets forth the rule of strict liability applicable to "users and consumers." The Restatement expressly refrains from taking a position on "bystanders" including members of the general public. See Restatement (Second) of Torts, supra, § 402A, Comment on Caveat: *o*. Recognition of this fact has caused case law to devolve on both sides of the question.

As we have observed on past occasions, this court finds to its disliking the task in diversity cases of attempting to predict the course of action the highest tribunal of a state might follow under similar circumstances. Nevertheless, a decision must be made on the basis of the existing Iowa law and a judgment made as to its probable application to areas where the law has not been fully crystallized. We conclude in the present case that the Iowa court would apply the doctrine of strict liability to a person in plaintiff's status. First, the Iowa court in adopting strict liability relies on cases from California,[8] Illinois[9] and New Jersey[10] which have been key states in early application of the doctrine in product cases. Justice Traynor's opinion in the *Greenman* case is considered by many to be the foremost authority explicating the doctrine of strict liability. In amplifying the rule pronounced in *Greenman*, the California Supreme Court has recognized liability to bystanders in a position similar to plaintiff's;[11] likewise, New Jersey,[12]

---

7. Often the concept of strict liability is confused with liability that is absolute. Such confusion is understandable when one compares older editions of tort casebooks. The indexes of such books use the heading of "Strict Liability" in reference to cases dealing with absolute liability, e. g., Fletcher v. Rylands, 3 Hurl. & C. 774, L.R. 3 H.L. 330 (1868). See F. Bolen, Cases on Torts, 634 (4 Ed. 1941).

  "Some quibbler may allege that this is liability without fault. It is not. As made clear above, a plaintiff relying upon the rule must prove a defect attributable to the manufacturer and causal connection between that defect and the injury or damage of which he complains. When able to do that, then

and only then may he recover against the manufacturer of the defective product." Piercefield v. Remington Arms Co., 375 Mich. 85, 133 N.W.2d 129, 135 (1965).

8. Greenman v. Yuba Power Products Corp., supra.

9. Suvada v. White Motor Co., 32 Ill.2d 612, 210 N.E.2d 182, 186 (1965).

10. Santor v. A & M Karagheusian, Inc., 44 N.J. 52, 207 A.2d 305, 313 (1965).

11. Elmore v. American Motors Corp., 70 Cal.2d 578, 75 Cal.Rptr. 652, 451 P.2d 84 (1969).

12. Lamendola v. Mizell, 115 N.J.Super. 514, 280 A.2d 241 (1971).

and by federal decision, Illinois,[13] have extended strict liability coverage to bystanders. Clearly, the plaintiff would be covered as a person within the vicinity of the use of the product under the test of foreseeability which is operative in these strict liability cases.[14]

"[T]he limitations inherent in the concept of foreseeability, insofar as it applies to legal responsibility and the facts of the instant case, offer no salve for defendants' wounds. An automobile manufacturer, producing millions of vehicles a year, offers them for sale to the public ultimately for daily use on the countless thoroughfares of this nation. It is, therefore, well within the realm of foreseeability that a pedestrian or other traveller lawfully upon the road will be injured due to a defect in a vehicle that in some way inhibits or forecloses its control by the driver." Lamendola v. Mizell, supra, 280 A.2d at 246.

Second, when a federal court is faced with the problem of determining state law without decisions of the state directly controlling, the court may be guided by the law which in its opinion provides the most just [15] and reasoned analysis. See Wasik v. Borg, 423 F.2d 44, 48 (2 Cir. 1970); Putman v. Erie City Mfg. Co., 338 F.2d 911, 917–923 (5 Cir. 1964).

We find the reasoning of the California Supreme Court persuasive in this regard. Mr. Justice Peters observes in Elmore v. American Motors Corp., supra, 451 P. 2d at 88–89:

"[T]he doctrine of strict liability may not be restricted on a theory of privity of contract. Since the doctrine applies even where the manufacturer has attempted to limit liability, they further make it clear that the doctrine may not be limited on the theory that no representation of safety is made to the bystander.

"The liability has been based upon the existence of a defective product which caused injury to a human being, and in both *Greenman* and *Vandermark* we did not limit the rules stated to consumers and users but instead used language applicable to human beings generally.

"It has been pointed out that an injury to a bystander 'is often a perfectly foreseeable risk of the maker's enterprise, and the considerations for imposing such risks on the maker without regard to his fault do not stop with those who undertake to use the chattel. [A restriction on the recovery by bystanders] is only the distorted shadow of a vanishing privity which is itself a reflection of the habit of

---

13. White v. Jeffrey Galion, Inc., 326 F. Supp. 751, 755 (E.D.Ill.1971).

14. "It is also clear that the injured person need not have been using the product at the time of his injury, and that liability may be imposed if he was within the range or in the vicinity of its probable use." L. Frumer & M. Friedman, Products Liability, § 5.03 [1] [c] at 35 (1967).

15. As the Michigan Supreme Court observed in Piercefield v. Remington Arms Co., 375 Mich. 85, 99, 133 N.W.2d 129, 135 (1965):

"Take the recent case of Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1, as an example of reason for the rule. Would anyone having read the court's exhaustive opinion, expect a result reasoned differently had, say, the plaintiff been a pedestrian who, when the Henning-

sen car 'veered sharply to the right and crashed into a highway sign and a brick wall,' suffered crushed legs as the car struck the wall? Take Spence as another example, and assume that the plaintiff there had been a bystander or visitor injured by a crumbling and buckling of some wall of the cottage which had been built of the defective blocks. Would our result have been different? See Justice Voelker's discussion of the probable deterioration of the blocks and the likelihood of their endangering the structure itself in the future ([Spence v. Three Rivers Builders Masonry Supply, Inc.] 353 Mich. [120] p. 126, 90 N.W.2d 873). Take Hill v. Harbor Steel, [374 Mich. 194, 132 N.W.2d 54.] Would we have denied recovery— on the same theory—to the personal representative of, say, a municipal inspector or buyer of scrap, then lawfully in the yard and killed by the same explosion?"

viewing the problem as a commercial one between traders, rather than as part of the accident problem.' (2 Harper and James, The Law of Torts (1956) p. 1572, fn. 6.)

"If anything, bystanders should be entitled to greater protection than the consumer or user *where injury to bystanders from the defect is reasonably foreseeable.* Consumers and users, at least, have the opportunity to inspect for defects and to limit their purchases to articles manufactured by reputable manufacturers and sold by reputable retailers, where as the bystander ordinarily has no such opportunities. In short, the bystander is in greater need of protection from defective products which are dangerous, and if any distinction should be made between bystanders and users, it should be made, contrary to the position of defendants, to extend greater liability in favor of the bystanders." (Emphasis ours.) [16]

The same analysis was recently made by the Texas Supreme Court in Darryl v. Ford Motor Co., 440 S.W.2d 630 (Tex. 1969); [17] see also Mitchell v. Miller, 26 Conn.Sup. 142, 214 A.2d 694, 697–699 (1965); Connolly v. Hagi, 24 Conn.Sup. 198, 188 A.2d 884, 887–888 (1963); Piercefield v. Remington Arms Co., supra, 375 Mich. at 134–136, 133 N.W.2d 129; Ford Motor Co. v. Cockrell, 211 So. 2d 833, 836 (Miss.1968).

Under the circumstances, we hold plaintiff is entitled to have her case submitted to the jury under Iowa law governing both negligent design and strict liability.

Reversed and remanded for a new trial.

16. See Putensen v. Clay Adams, Inc., 12 Cal.App.3d 1062, 1072, 91 Cal.Rptr. 319, 325 (1970):
"This [strict] liability extends not only to actual consumers and users but to any human being to whom an injury from a defect is reasonably foreseeable [citing *Elmore*]."

17. If anything, the *Darryl* case goes farther than *Elmore*. In *Darryl* the court said: "A manufacturer who places in commerce a product rendered dangerous to life or limb by reason of some defect is strictly liable in tort *to one who sustains injury* because of the defective condition." (Emphasis ours.) 440 S.W.2d at 633.